## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JONAH PAINTER )
           Plaintiff, )
   vs. )      Case No.:     2:16-cv-02258
 )
UNIVERSITY OF KANSAS, )
          Defendant. )

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
### AND DESIGNATION OF PLACE OF TRIAL

COMES NOW, Plaintiff Jonah Painter ("Plaintiff Painter") and, by and through undersigned counsel, files the following Complaint against Defendant University of Kansas ("KU"):

### PARTIES.

1.     Plaintiff Painter is a resident of Douglas County, Kansas.

2.     Plaintiff Painter worked at The University of Kansas, Lawrence Campus.

3.     Defendant KU is a state-supported educational institution of higher learning, with Plaintiff Painter's workplace, and KU's main campus, located in Lawrence, Kansas, with a principal place of business is Strong Hall, Lawrence, Kansas 66045.

4.     Defendant KU may be served with process by service thereof upon Bernadette Gray-Little, Chancellor, at Strong Hall, Room 230, 1450 Jayhawk Blvd., Lawrence, Kansas; James P. Pottorff, Jr., General Counsel, at Strong Hall, Room 245, 1450 Jayhawk Blvd., Lawrence, Kansas; or Derek Schmidt, Attorney General of the State of Kansas, 120 S.W. 10th St., Topeka, Kansas. The University's mailing address is Strong Hall, Room 230, 1450 Jayhawk Blvd., Lawrence, Kansas 66045-7535.

5.     KU is an "employer" within the meaning of Title VII, K.S.A. §44-1001, et seq.

6.      During calendar year 2014, for each working day during each of 20 or more calendar weeks, KU employed 50 or more employees within a 75-mile radius of Plaintiff Painter's location of employment.

7.      Defendant KU had at least 15 employees at all relevant times.

8.      This is an action for discrimination in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

## JURISDICTION AND VENUE.

9.      This Court has original jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5, in as much as the matter in controversy is brought pursuant the Family Medical Leave Act ("FMLA"). This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination.

10.     This Court has jurisdiction pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12117 (disability discrimination); The Rehabilitation Act, 29 U.S.C.A. § 794 (disability discrimination); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

11.     The amount in controversy in this action exceeds the jurisdictional limits of this Court.

12.     Venue is proper in that Defendant is located within this District and the acts complained of took place within this District.

13.     On or about February 2, 2015, Plaintiff Painter filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination retaliation. A true

and accurate copy of Plaintiff Painter's EEOC complaint filed on or about February 2, 2015 is attached hereto as **Exhibit "A"**.

14.     On or about August 18, 2016, the U.S. Department of Justice Civil Rights Division issued Plaintiff Painter his Notice of Right to Sue Letter. A true and accurate copy of Plaintiff Painter's Notice of Right to Sue Letter dated August 18, 2016 is attached hereto as **Exhibit "B"**.

15.     Plaintiff's claims are timely in that one or more actions complained of herein occurred within the statute of limitations period such that the "continuing action" theory is applicable in this matter.

16.     Defendant KU is a "program or activity" as defined by the Rehabilitation Act, i.e., "a college, university, or other postsecondary institution." 29 U.S.C.A. § 794(b)(2)(A).

17.     Upon information and belief, Defendant KU receives Federal financial assistance through student loans, Pell Grants, and/or Medicare and Medicaid payments. By doing so, Defendant KU has waived immunity under the Rehabilitation Act.

18.     Defendant's actions, and failure to act, amounted to disability discrimination and retaliation under Title I and Title V of the American's with Disabilities Act and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment abrogates the states' Eleventh Amendment sovereign immunity. Title Title I and Title V of the American's with Disabilities Act, provides an enforcement remedy for equal protection violations of state employees through Section 5 of the Fourteenth Amendment.

19.     Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of his disability.

## FACTS COMMON TO ALL COUNTS.

20.     Plaintiff Painter hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

21.     At all times, relevant hereto, Plaintiff was employed with Defendants and was last employed with Defendants as a food service worker.

22.     At all times relevant hereto, Plaintiff performed his job diligently.

23.     Beginning in or 2013 and continuing through the remainder of his employment up to and including his termination, Defendants subjected Plaintiff to disparate treatment, discrimination, and/or harassment based on his disability and/or his requests for reasonable accommodations, as set forth herein.

24.     Beginning in or about 2013 and continuing through the remainder of his employment, Plaintiff engaged in protected activity by opposing such disparate treatment, discrimination, and/or harassment through repeated written and verbal complaints made to Defendants and/or Defendants' agents, servants, and/or employees.

25.     Beginning in or about 2013 and continuing through the remainder of his employment up to and including his termination, Defendants subjected Plaintiff to retaliation due to his protected activity, as set forth herein.

26.     Beginning in or about 2013 and continuing through the remainder of his employment up to and including his termination, Defendants subjected Plaintiff to coercion, intimidation, threats due to his exercise and/or enjoyment of rights granted and/or protected by the ADA, as set forth herein.

27.     Beginning in or about 2013 and continuing through the remainder of his employment up to and including his termination, Defendants interfered with Plaintiff in the exercise or enjoyment of rights granted or protected by the ADA, as set forth herein.

28.     Such conduct as described in the foregoing paragraphs includes, but is not limited to:

a.      Denial of requested accommodation(s) for his disability;

b.      Harassing and discriminatory comments;

c.      Withdrawal of previously granted accommodation(s);

d.      Reporting of Plaintiff's time off as unexcused;

e.      Threats of termination;

f.      Unwarranted disciplinary action(s);

g.      Asking Plaintiff detailed questions about his disability and treatment;

h.      Counseling Plaintiff for "excessive absences due to medical and non-medically related reasons."

i.      Disciplining Plaintiff for alleged chronic and habitual leave violations;

j.      Disciplining Plaintiff for "low leave balances";

k.      Disciplining Plaintiff and placing him on "chronic and habitual leave use sanctions";

l.      Changing his schedule;

m.      Denial of a full raise;

n.      Requiring Plaintiff to abide by extra and onerous procedures and requirements which were not applied to other non-disabled employees;

o.      Disclosure of Plaintiff's medical condition;

p.      Unreasonable delay in granting requested accommodations;

q.     Refusing to consider Plaintiff for promotion and/or special projects;

r.     Plaintiff's Performance Evaluation for University Support Staff for the year ending December 31, 2013 stated, among other things, "**he has health issues that often impair his productivity.**"

s.     Plaintiff's Performance Evaluation for University Support Staff for the year ending December 31, 2013 stated, among other things, "**He has had health issues, family issues, attendance issues, and reading problems.**"

t.     Termination of Plaintiff's employment effective April 25, 2014;

u.     Opposing his unemployment benefits;

v.     Falsely claiming it was unaware that Plaintiff had any disability.

29.     Plaintiff Painter has rheumatoid arthritis ("RA"). RA is a chronic (long-term) disease that causes Plaintiff Painter pain, stiffness, swelling and limited motion and function of many joints. Plaintiff Painter's RA causes him pain, stiffness, swelling and limited motion of his hands and feet. Plaintiff Painter's symptoms are worst in the mornings.

30.     RA is a serious medical condition.

31.     Defendant was aware that Plaintiff had RA.

32.     Plaintiff Painter has learning disabilities that cause him difficulties with reading and reading comprehension.

33.     Plaintiff Painter's learning disabilities are serious medical conditions.

34.     Plaintiff Painter's RA and learning disabilities impact one or more of Plaintiff Painter's major life activities.

35.     While in school Plaintiff Painter participated in special education services.

36.     RA is a disability in that it impacts one or more of Plaintiff Painter's major life activities.

37.     As a result of his RA, Plaintiff Painter developed an issue for alcohol dependency in which he sought medical treatment.

38.     Defendant granted Plaintiff Painter's request to take Family Medical Leave for treatment of his alcohol dependency.

39.     Plaintiff Painter took Family Medical Leave for treatment of his alcohol dependency.

40.     Plaintiff Painter's disabilities cause him, at times, to need assistance caring for himself, difficulty in performing manual tasks, difficulty in eating, difficulty in sleeping, difficulty in walking, difficulty in standing, difficulty in lifting, difficulty in concentrating, difficulty in thinking, difficulty reading, difficulty in comprehension, difficulty in communicating, and difficulty in working.

41.     Plaintiff Painter could perform the job with or without a reasonable accommodation.

42.     On or about October 22, 2009, Plaintiff Painter's supervisor signed a Performance Evaluation for Classified Employees for Plaintiff Painter for the time period January 1, 2009 through December 31, 2009 ("2009 Review").

43.     Plaintiff Painter's 2009 Review stated "Jonah does great job w/ helping out where needed."

44.     Plaintiff Painter's 2009 Review stated "Often very flexible w/ time."

45.     Plaintiff Painter's 2009 Review stated "Misses work because of RA."

46.     Plaintiff Painter's 2009 Review stated "Little short in that Dept."

47.     On or about December 10, 2009, Defendant's Human Resources Department received Plaintiff Painter's signed Performance Evaluation for Classified Employees.

48.     Defendant was aware that Plaintiff Painter had RA, at the very latest, October 22, 2009.

49.     A true and accurate copy of the Performance Evaluation for Classified Employees for Plaintiff Painter for the time period January 1, 2009 through December 31, 2009 is attached hereto as **Exhibit "C"**

50.     On or about June 13, 2013, Plaintiff Painter was approved for intermittent FMLA because of "RA".

51.     In or around August 2013, the Defendant changed Plaintiff Painter's hours to Monday, Tuesday, Wednesday, Thursday and Friday from ***6:00 am to 2:30 pm***.

52.     Prior changing his start time to 6:00 am, Plaintiff Painter had been working ***Wednesday, Thursday, Friday and Saturday from 9:00 am to 7:30 pm***.

53.     At the time Defendant changed Plaintiff Painter's hours, Plaintiff Painter told the Defendant that due to his RA it would be difficult, if not impossible, for him to start work at 6:00 am.

54.     At the relevant time, Defendant followed a policy regarding attendance that was implemented in or around the year 2000. The policy specifically stated:

> **Excessive Absence** - Excessive absence from work occurs when an employee is away from work to the extent that completion of normal work requirements is adversely affected. ***These absences may have been excused or unexcused and caused by medical or other reasons. An employee must be notified that absences are excessive before such incidents can be counted toward corrective action***.

> \*\*\*

> **Chronic/Excessive/or Unjustified Absences** - A "chronic pattern of excessive or unjustified absences" exists when an employee's absences from work--***whether excused or not***--have a negative affect on a unit's ability to provide service. In these cases, written notice will be given to the employee that the chronic absences are a hardship on the work unit and that additional requirements must be met in order to receive approved leave. These requirements include:

- 2 weeks, notice for use of vacation leave, discretionary day or compensatory time,

- documentation to support other paid leave (funeral leave, jury duty, etc.), and

- a physician's statement verifying incapacitation, medical reasons for the absence, and anticipated date of return when sick leave is requested.

55.     On or about December 16, 2013, without being cited for any specific attendance violation, Plaintiff Painter was written up for Excessive Absences Due to Medical and Non-Medically Related Reasons.

56.     Among the comments in the letter, the Defendant stated "you have been away from work, using a great deal of sick leave" and "[y]our failure to maintain a larger balance of sick leave has caused Plaintiff Painter to wonder whether you are abusing your leave privileges and taking advantage of this employee benefit."

57.     A true and accurate copy of the Excessive Absences Due to Medical and Non-Medically Related Reasons write up dated December 16, 2013 is attached hereto as **Exhibit "D"**.

58.     On or about December 17, 2013, Plaintiff Painter was written up again alleging that he had been tardy on December 10, December 11 and December 13.

59.     A true and accurate copy of the December 17, 2013 write up is attached hereto as **Exhibit "E"**.

60.     On or about January 23, 2014, without any specific attendance violation, Plaintiff Painter was given a Written Reprimand and Chronic and Habitual Attendance Violation. It stated, among other things, "Excessive absence, ***regardless of the reason***, causes problems in providing service to our students."

61.     A true and accurate copy of the January 23, 2014 write up is attached hereto as **Exhibit "F"**.

62.     On or about January 31, 2014, without any specific attendance violation, the Defendant gave Plaintiff Painter a Written Reprimand for attendance stating, among other things, "Mr. Painter has shown a pattern of chronic absences."

63.     A true and accurate copy of the January 31, 2014 write up is attached hereto as **Exhibit "G"**.

64.     On or about February 18, 2014, Plaintiff Painter was given another Written Reprimand for allegedly being tardy on February 3, 2014 and February 6, 2014.

65.     A true and accurate copy of the February 18, 2014 write up is attached hereto as **Exhibit "H"**.

66.     On or about February 18, 2014, Plaintiff Painter was given a review for the time period January 1, 2013 through December 31, 2013 ("2013 Review).

67.     A number of comments in Plaintiff Painter's February 18, 2014 review were regarding Plaintiff Painter's health issues, among the comments, were the following:

- "He is tardy far too often, which makes the start of the day much more stressful than it needs to be, and *he has health issues that often impair his productivity*."

- "He has had *health issues*, family issues, attendance issues and *reading problems*."

68.     Plaintiff Painter's 2013 Review stated "He is tardy far too often, which makes the start of the day much more stressful than it needs to be, and *he has health issues that often impair his productivity*."

69.     Plaintiff Painter's 2013 Review stated "He has had *health issues*, family issues, attendance issues and *reading problems*."

70.     A true and accurate copy of the February 18, 2014 review is attached hereto as **Exhibit "I"**.

71.     On or about April 1, 2014, Plaintiff Painter had a doctor's appointment. Plaintiff Painter's doctor noted in Plaintiff Painter's medical records that "Rheumatoid Arthritis not under good control."

72.     Due to the problems Plaintiff Painter was having with his RA, his doctor gave him a note requesting that Plaintiff Painter be excused from work on April 2, 2014.

73.     A true and accurate copy of the doctor note dated April 2, 2014 is attached hereto as **Exhibit "J"**.

74.     On or about April 10, 2014, the Defendant sent Plaintiff Painter a letter proposing that Plaintiff Painter be suspended without pay for 3 days alleging that he was a "No-Call, No-Show" on April 2, 2014. The letter fails to mention anything about Plaintiff Painter's doctor's note excusing Plaintiff Painter for the day.

75.     A true and accurate copy of the April 10, 2014 letter is attached hereto as **Exhibit "K"**.

76.     On or about April 11, 2014, Plaintiff Painter met with Allen Humphrey, Assistant Director, regarding the proposed 3 day suspension. During the meeting, Plaintiff Painter explained to Mr. Humphrey that Plaintiff Painter was not a "No-Call, No-Show" on April 2, 2014 and that Plaintiff Painter had, in fact, called in prior to Plaintiff Painter's shift. Plaintiff Painter also explained to Mr. Humphrey that Plaintiff Painter had a note from Plaintiff Painter's doctor excusing Plaintiff Painter from work on April 2, 2014.

77.     On or about April 15, 2014, Plaintiff Painter was sent a letter from Allen Humphrey suspending Plaintiff Painter for 3 days. The letter reinforces the fact that the disciplinary process was

started on December 16, 2013 without any specific attendance violation. In the letter, Mr. Humphrey admonished Plaintiff Painter for calling in Plaintiff Painter's absences to (785) 864-3120 and says that Plaintiff Painter should have called a different number. However, Defendant's documents show that the number called by Plaintiff Painter was correct.

78.     A true and accurate copy of the April 15, 2014 letter is attached hereto as **Exhibit "L"**.

79.     On or about April 16, 2014, Plaintiff Painter was sent a letter from Allen Humphrey proposing to terminate Plaintiff Painter's employment. The letter alleged that on April 11, 2014, Plaintiff Painter was 1 hour tardy; that, on April 14, 2014, although Plaintiff Painter called in at 5:45 am and subsequently took the day off that Plaintiff Painter was "tardy"; and, that on April 16, 2014, Plaintiff Painter was 9 minutes "tardy".

80.     A true and accurate copy of the April 16, 2014 letter is attached hereto as **Exhibit "M"**.

81.     On or about April 18, 2014, Plaintiff Painter met again with Allen Humphrey to discuss the proposal to terminate Plaintiff Painter's employment. Again, Plaintiff Painter explained that Plaintiff Painter's RA made it nearly impossible for Plaintiff Painter to arrive at work by 6:00 am every day. Plaintiff Painter further explained to him that he had a note from his doctor excusing Plaintiff Painter from work on April 16, 2014.

82.     A true and accurate copy of the doctor's note for April 16, 2014 is attached hereto as **Exhibit "N"**.

83.     On or about April 21, 2014, Plaintiff Painter was sent a letter from Allen Humphrey terminating Plaintiff Painter's employment effective April 25, 2014. The letter further stated that Plaintiff Painter was ineligible for rehire.

84.     A true and accurate copy of the April 21, 2014 letter is attached hereto as **Exhibit "O"**.

85.     On or about April 29, 2014, Plaintiff Painter was sent a letter from Katie McCauley, Human Resource Specialist, denying Plaintiff Painter's request for coverage under the Family Medical Leave Act because Plaintiff Painter had been terminated on or about April 25, 2014. The letter further stated that on April 17, 2014 the Defendant had received a Certification of Health Care Provider form complete by Plaintiff Painter's doctor requesting FMLA leave.

86.     A true and accurate copy of the April 29, 2014 letter is attached hereto as **Exhibit "P"**.

87.     Plaintiff Painter filed for unemployment benefits with the Kansas Department of Labor. The Defendant opposed Plaintiff Painter's request. On or about May 14, 2014, the Kansas Department of Labor denied Plaintiff Painter's request finding, among other things, that "CLAIMANT WAS DISCHARGED FOR CONTINUING TO REPORT LATE TO WORK"; "THE EVIDENCE PRESENTED DOES NOT ESTABLISH THE MAJORITY OF THE LATENESS WERE FOR GOOD CAUSE. CLAIMANT WAS DISCHARGED FOR MISCONDUCT CONNECTED WITH THE WORK."

88.     A true and accurate copy of the May 14, 2014 unemployment denial is attached hereto as **Exhibit "Q"**.

89.     On or about May 28, 2014, Plaintiff Painter filed an appeal of the denial of Plaintiff Painter's unemployment benefits.

90.     A true and accurate copy of the May 28, 2014 appeal is attached hereto as **Exhibit "R"**.

91.     On or about June 16, 2014, a telephone hearing was conducted regarding Plaintiff Painter's unemployment benefits.

92.     On or about June 23, 2014, the Kansas Department of Labor mailed its Decision in which the Appeals Referee reversed the examiner's decision and awarded Plaintiff Painter Plaintiff Painter's unemployment benefits.

93.     A true and accurate copy of the June 23, 2014 Decision is attached hereto as **Exhibit "S"**.

94.     On or about July 8, 2014, the Defendant filed an appeal of the Appeal Referee's decision to award Plaintiff Painter unemployment benefits to the Board of Review. See **Exhibit "T"**.

95.     A true and accurate copy of the July 8, 2014 unemployment appeal submitted by Defendant is attached hereto as **Exhibit "U"**.

96.     On or about September 12, 2014, in a 2 to 1 decision, the Board of Review entered a Decision reversing the Appeals Referee's award of Plaintiff Painter's unemployment benefits. Based on this decision, Plaintiff Painter was required to repay the previously paid benefits.

97.     A true and accurate copy of the September 12, 2014 unemployment decision is attached hereto as **Exhibit "V"**.

98.     Plaintiff Painter requested review of the decision of the Board of Review.

99.     The decision of the Board of Review was upheld by the Douglas County District Court on or about March 27, 2015 and Plaintiff Painter was denied his unemployment benefits.

100.    Plaintiff Painter began his employment with KU shortly after high school. Plaintiff Painter found the job at KU with the help of a job coach.

101.    Plaintiff Painter worked at least 1,250 hours per year to qualify for FMLA leave.

102.    At all relevant times, Plaintiff Painter was meeting all the legitimate expectations of his job.

103.    Plaintiff Painter had a right for up to 12 weeks of unpaid leave in a 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

104.    Plaintiff Painter qualified for FMLA leave while employed by the Defendant.

105.    Plaintiff Painter was approved to take FMLA ("Family Medical Leave Act") leave at the following times:

    a.    March 28, 2010 – April 25, 2010 for in-patient alcohol treatment;

    b.    September 14, 2010 – September 24, 2010 for in-patient alcohol treatment;

    c.    January 24, 2011 – February 26, 2011 for in-patient alcohol treatment;

    d.    March 11, 2014 – March 14, 2014 to care for his spouse after surgery; and

    e.    June 3, 2013 through June 3, 2014 for rheumatoid arthritis for intermittent leave;

106.    On or about April 21, 2014, a letter was mailed to Plaintiff Painter advising him he was terminated effective April 25, 2014.

107.    Plaintiff Painter was terminated for alleged issues that had never been brought up to him prior to his FMLA leave.

108.    At no other time prior to his termination was Plaintiff Painter ever told that he was having any issues successfully performing his job.

109.    At the time of his termination, Plaintiff Painter was not allowed to see any termination paperwork that outlined the reasons for his termination.

110.    Defendant further retaliated against Plaintiff Painter by opposing his claim for unemployment through the Kansas Department of Labor. Defendant opposed Plaintiff Painter's unemployment claim to retaliate against him for complaining that he was terminated in violation of

the law. Defendant continued to deny Plaintiff Painter's unemployment claim through the appeal in the Douglas County District Court, and Plaintiff Painter's unemployment claims were finally denied by the court on or about March 27, 2015.

## COUNT I
## VIOLATION OF FMLA AGAINST DEFENDANT.

111.    Plaintiff Painter hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

112.    The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right pursuant to the FMLA.

113.    Defendant is an employer within the meaning of the FMLA.

114.    Plaintiff Painter was entitled to FMLA leave.

115.    Defendant interfered with, restrained, and denied Plaintiff Painter's exercise, and attempted exercise, of rights pursuant to the FMLA by interfering with his attempts to use leave and then terminating his employment for taking leave.

116.    Defendant applied KU's policies in a manner that held Plaintiff Painter accountable for work that he could not complete while he was out on approved FMLA leave.

117.    Defendant retaliated against Plaintiff Painter for his exercise and attempted exercise of FMLA rights by terminating his employment.

118.    Defendant willfully violated the FMLA and interfered in Plaintiff Painter's attempts to take FMLA leave.

119.    Defendant willfully violated the FMLA and retaliated against the Plaintiff Painter for taking approved FMLA leave.

120.    Defendant retaliated against Plaintiff Painter because of the exercise of his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2) and 2615(b).

121.    Plaintiff Painter was terminated for exercising his rights under the FMLA.

122.    The conduct of the defendant against Plaintiff Painter was willful, wanton or malicious, justifying the imposition of an award of punitive damages against General Motors.

123.    Plaintiff Painter is entitled to all damages authorized by 29 U.S.C. § 2617, including reinstatement, injunctive relief, lost wages and benefits, interest, liquidated damages, attorneys' fees, and equitable relief. If Defendant is considered part of the State of Kansas and it has not waived sovereign immunity, then damages may be limited to injunctive relief, such as reinstatement, attorney's fees and costs.

WHEREFORE, Plaintiff Jonah Painter prays that this Court grant the following remedies:

a.    Grant a permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which interfere and/or discriminate in violation of the Family Medical Leave Act;

b.    Order Defendant to institute and implement, training programs, policies, practices and programs designed to ensure the company provides equal employment opportunities for individuals with present, past, or perceived disabilities, and to revise its policies with respect to the Family Medical Leave including its notices, forms, and letters;

c.    Award Plaintiff reasonable attorney's fees, costs, and interest;

d.    Award Plaintiff equitable relief including, but not limited to: an injunction directing Defendants to cease their discriminatory conduct and practices; full reinstatement to his employment and position with Defendants; and injunctive relief directing Defendants to provide Plaintiff his requested reasonable accommodations within a reasonable time; and

e.    Award such other relief as this Court deems just and proper.

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA AND THE REHABILITATION ACT.

124.    Plaintiff Painter hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

125.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

126.    Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit:

    a.    a physical impairment, to wit:  rheumatoid arthritis and learning disabilities, which substantially limits one or more of his major life activities, including, but not limited to: accomplishment of his daily routines of life; digestion; reading; comprehension; concentration; driving; and/or working;

    b.    a record of such physical impairment.

127.    Plaintiff is a qualified individual with a disability as defined by the Americans with Disabilities Act, to-wit: Plaintiff, with reasonable accommodation, is able to perform the essential functions of his employment position with Defendant.

128.    Plaintiff is a "qualified" individual with a disability under the Rehabilitation Act. 29 U.S.C.A. § 794.

129.    During his employment, Plaintiff made repeated verbal and/or written requests for reasonable accommodations for his disability including, but possibly not limited to, in August 2013; December 2013; January, February, March and April 2014.

130.    Such reasonable requests included, but were possibly not limited to:  leave; time off; revised work schedules; periodic breaks.

131.    Prior to the date of Plaintiff's termination, Defendants provided some reasonable accommodations for Plaintiff's disability including, allowance of time off.

132.    In or about December 2013, Defendant disciplined Plaintiff for taking approved time off for his disability.

133.    In or about December 2013, Defendant denied Plaintiff's requests for reasonable accommodations, failed to provide requested reasonable accommodations, withdrew previously agreed to reasonable accommodations.

134.    While employed by Defendants, Plaintiff was excluded from participation in, denied the benefits of, and/or subjected to discrimination under a program or activity receiving Federal financial assistance by Defendants, and by and through their agents, servants and/or employees, because of his disability, said acts being made unlawful by the Rehabilitation Act, 29 U.S.C.A. § 794, said acts including, but not limited to: failing to provide reasonable accommodations for Plaintiff's disability and/or withdrawing previously granted reasonable accommodations.

135.    While employed by Defendants, Plaintiff subjected to discrimination because of his disability by Defendants, and by and through their agents, servants and/or employees, said acts being made unlawful by the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and the Rehabilitation Act, 29 U.S.C.A. § 794, said acts including, but not limited to: failing to provide reasonable accommodations for Plaintiff's disability and/or withdrawing previously granted reasonable accommodations.

136.    Defendants engaged in said discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff.

137.    As a direct and proximate result of Defendant's violation of the ADA and the Rehabilitation Act, as aforestated, Plaintiff has suffered aggravation of his disability and its symptoms, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

138.     As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff Jonah Painter prays that this Court grant the following remedies:

  a.  Declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C.A. § 794,

  b.  Award Plaintiff all lost wages, past and future, to which he is entitled;

  c.  Award Plaintiff compensatory damages;

  d.  Award Plaintiff punitive and exemplary damages;

  e.  Award Plaintiff reasonable attorney's fees, costs, and interest;

  f.  Award Plaintiff equitable relief including, but not limited to: an injunction directing Defendants to cease their discriminatory conduct and practices; full reinstatement to his employment and position with Defendants; and injunctive relief directing Defendants to provide Plaintiff his requested reasonable accommodations within a reasonable time; and

  g.  Award such other relief as this Court deems just and proper.

## COUNT III
## DISCRIMINATION IN VIOLATION OF THE ADA AND THE REHABILITATION ACT

139.     Plaintiff Painter hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

140.     Defendants subjected Plaintiff to disparate treatment, harassment, and/or termination, as set forth herein, in whole or in part because of his disability and/or his requests for reasonable accommodations for his disability, said acts being made unlawful by Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and the Rehabilitation Act, 29 U.S.C.A. § 794.

141.    Defendants violated the aforementioned ADA and Rehabilitation Act by, inter alia, the following acts:

a.    Discharging or otherwise limiting, segregating, or classifying Plaintiff in a way that adversely affected the opportunities or status of Plaintiff because of his disability and/or requests for accommodation;

b.    Denying employment opportunities to Plaintiff based on the need of Defendant to make reasonable accommodations for Plaintiff's disability;

c.    Denying employment opportunities to Plaintiff because of his disability and/or requests for accommodation;

d.    Subjecting Plaintiff to disparate treatment and harassment on the basis of his disability and/or requests for accommodation;

e.    Creating and subjecting Plaintiff to a hostile environment on the basis of Plaintiff's disability and/or requests for accommodation; and/or

f.    Excluded Plaintiff from participation in, denying Plaintiff the benefits of, and/or subjecting Plaintiff to discrimination under a program or activity receiving Federal financial assistance.

142.    Defendants engaged in said discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff.

143.    As a direct and proximate result of Defendants violation of the ADA and the Rehabilitation Act, as aforestated, Plaintiff has suffered aggravation of his disability and its symptoms, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

144.     As a further direct and proximate result of Defendants violation of the ADA and the Rehabilitation Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff Jonah Painter prays that this Court grant the following remedies:

a.     Declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C.A. § 794,

b.     Award Plaintiff all lost wages, past and future, to which he is entitled;

c.     Award Plaintiff compensatory damages;

d.     Award Plaintiff punitive and exemplary damages;

e.     Award Plaintiff reasonable attorney's fees, costs, and interest;

f.     Award Plaintiff equitable relief including, but not limited to: an injunction directing Defendants to cease their discriminatory conduct and practices; full reinstatement to his employment and position with Defendants; and injunctive relief directing Defendants to provide Plaintiff his requested reasonable accommodations within a reasonable time; and

g.     Award such other relief as this Court deems just and proper.

## COUNT IV
## RETALIATION, INTERFERENCE, COERCION AND/OR INTIMIDATION IN VIOLATION OF THE ADA AND THE REHABILITATION ACT

145.     Plaintiff Painter hereby incorporates by reference each and every allegation and averment in the preceding paragraphs as though fully set forth herein.

146.     Plaintiff incorporates by reference the foregoing paragraphs.

147.     During the time Plaintiff was employed by Defendants, Plaintiff engaged in protected activity under the ADA, the Rehabilitation Act, and PWDCRA to wit, Plaintiff opposed acts and practices made unlawful by the ADA, the Rehabilitation Act, and PWDCRA including, but

not limited to, failing to accommodate Plaintiff's disability, withdrawing previous accommodation(s) for Plaintiff's disability, and/or subjecting Plaintiff to disparate treatment, harassment, and/or discrimination on the basis of his disability, as set forth herein.

148.     Defendants retaliated and discriminated against Plaintiff for engaging in said protected by activity, as set forth herein.

149.     During the time Plaintiff was employed by Defendants, he exercised and/or enjoyed rights granted and/or protected by the ADA and/or the Rehabilitation Act, including, but not limited to, requesting and making use of reasonable accommodations for his disability, as set forth herein.

150.     Defendants coerced, intimated, and/or threatened Plaintiff on account of his having exercised and/or enjoyed rights granted and/or protected by the ADA and/or the Rehabilitation Act, as set forth herein.

151.     Defendants interfered with Plaintiff in the exercise and/or enjoyment of rights granted and/or protected by the ADA and/or the Rehabilitation Act, as set forth herein.

152.     As a direct and proximate result of Defendants' retaliation, interference, coercion and/or intimidation in violation of the ADA and/or the Rehabilitation Act, Plaintiff has suffered aggravation of his disability and its symptoms, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

153.     As a further direct and proximate result of Defendants' retaliation, interference, coercion and/or intimidation in violation of the ADA and/or the Rehabilitation Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

WHEREFORE, Plaintiff Jonah Painter prays that this Court grant the following remedies:

a.     Declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C.A. § 794,

b.     Award Plaintiff all lost wages, past and future, to which he is entitled;

c.     Award Plaintiff compensatory damages;

d.     Award Plaintiff punitive and exemplary damages;

e.     Award Plaintiff reasonable attorney's fees, costs, and interest;

f.     Award Plaintiff equitable relief including, but not limited to: an injunction directing Defendants to cease their discriminatory conduct and practices; full reinstatement to his employment and position with Defendants; and injunctive relief directing Defendants to provide Plaintiff his requested reasonable accommodations within a reasonable time; and

g.     Award such other relief as this Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and all legal and equitable relief requested in this complaint.

## REQUEST FOR JURY TRIAL.

Plaintiff Painter requests a jury trial on all claims asserted herein.

## DESIGNATION OF PLACE OF TRIAL.

Plaintiff Painter designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

/s/ Aaron C. McKee
Aaron C. McKee       KS # 20889
MCKEE LAW, L.L.C.
222 South Cherry Street
Olathe, Kansas 66061
Phone: (913) 768-6400
Facsimile: (913) 768-6420
aaronmckee@mckee-law.com

/s/ Kevin C. Koc
Patrick G. Reavey KS# 17291
Kevin C. Koc KS# 24953
REAVEY LAW LLC
Livestock Exchange Building
1600 Genessee Suite 303
Kansas City, MO 64102
Ph: 816.474.6300
Fax: 816.474.6302
Email: preavey@reaveylaw.com
Email: kkoc@reaveylaw.com
Website: www.reaveylaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on November 17, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Megan K. Walawender
University of Kansas
Associate General Counsel
245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, Kansas 66045
Tel: (785) 864-3276
Fax: (785) 864-4617
megan.walawender@ku.edu
**ATTORNEYS FOR DEFENDANT**        /s/ Aaron C. McKee

# Exhibit "A"

From: Aaron McKee    Fax: (913) 768-6400    To: +19135516957    Fax: +19135516957    Page 5 of 87 02/02/2015 6:05 PM

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| __ FEPA | | |
| X EEOC | 563-2015-00667 | |

Kansas Human Rights Agency
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Jonah H. Painter, Sr. | (785) 393-5037 | |

| Street Address | City, State and ZIP Code |
|---|---|
| | Lawrence, Kansas 66046 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| University of Kansas, Department of HR & Equal Opportunity | Over 15 | (785) |

| Street Address | City, State and ZIP Code |
|---|---|
| Carruth O'Leary Hall, 1246 West Campus Road, Room 103, Lawrence, Kansas 66045 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | Over 15 | (785) |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest        Latest |
| __ RACE  __ COLOR  __ SEX  __ RELIGION  __ NATIONAL ORIGIN | August 2013 to TODAY. |
| X RETALIATION  __ AGE  X DISABILITY  __ OTHER (Specify below.) | X CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

I believe that Respondent discriminated and retaliated against me due to, among other things, having a disability, for having a history of a disability and/or for regarding me as disabled. I further believe that I was discriminated and retaliated against when the Respondent failed to follow its policies and procedures, failed to enter into the interactive process of accommodation and disciplined me for absenteeism due to doctors' visits and my disability. I believe that I was subjected to acts of discrimination and retaliation due to my disability, my record of a disability, or by being regarded as disabled, and as acts of retaliation for having openly opposed acts and practices forbidden by the Kansas Act Against Discrimination, Title VII of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1991, the Family Medical Leave Act and the Americans with Disabilities Amendment Act of 2008 ("ADAAA") and subjected to additional discriminatory actions as acts of retaliation for having previously complained of discrimination and retaliation.

I further believe that the Respondent failed to provide me with a reasonable accommodation.

I have a *history of Rheumatoid Arthritis, Attention Deficit Disorder and difficulties with reading and comprehension.* I was diagnosed with rheumatoid arthritis in or about 2008.

My rheumatoid arthritis slows me down and causes me to move at a slower pace in the morning. For example, if there is ice on the windshield, then it takes me more time to scrape it clear because of my joint problems. As a result, I could have been a few minutes late for the reason that my body was not moving quickly due to my medical condition. Other mornings I will wake up with joints swollen and

in severe pain or flare ups, and when this happens I am in so much pain that I can hardly move let alone think clearly.

I was employed by University of Kansas, Department of HR & Equal Opportunity in Carruth Hall as a food service worker making $12.04 per hour from on or about June 11, 2000 until on or about April 25, 2014 when I was terminated. However, I believe that the discrimination and retaliation has been continuing since that time due to the Respondent's continued opposition to my unemployment benefits.

As an accommodation under the Americans with Disabilities Act, I took approved leave, including Family Medical Leave, several times during my employment, most recently, starting in June 2013, when I was approved for intermittent leave.

### Respondent's Attendance Policy

Due to a policy of Respondent, I began to be written up for alleged attendance violations that related to my medical issues.

Respondent has a policy regarding attendance that was implemented in or around the year 2000. I believe that the policy is discriminatory in that it states, among other things, that:

**Excessive Absence** - Excessive absence from work occurs when an employee is away from work to the extent that completion of normal work requirements is adversely affected. *These absences may have been excused or unexcused and caused by medical or other reasons. An employee must be notified that absences are excessive before such incidents can be counted toward corrective action.*
\*\*\*

**Chronic/Excessive/or Unjustified Absences** - A "chronic pattern of excessive or unjustified absences" exists when an employee's absences from work—*whether excused or not*—have a negative affect on a unit's ability to provide service. In these cases, written notice will be given to the employee that the chronic absences are a hardship on the work unit and that additional requirements must be met in order to receive approved leave. These requirements include:

- 2 weeks, notice for use of vacation leave, discretionary day or compensatory time,
- documentation to support other paid leave (funeral leave, jury duty, etc.), and
- a physician's statement verifying incapacitation, medical reasons for the absence, and anticipated date of return when sick leave is requested.

I believe that this is a type of "no fault" attendance policy that adversely affects people with disabilities, such as myself. The policy subjected me to discipline when I had missed work for excused medically related reasons and directly led to my termination.

### Leave Is A Recognized Reasonable Accommodation
### Under The Americans With Disabilities Act

It is well-settled that leave can be a reasonable accommodation under the ADA. All too often, employers wrongly assume that if an employee has exhausted his or her leave under the Family and

McKee Law, L.L.C., 13470 Arapaho Drive ■ Suite 170 ■ Olathe, Kansas 66062
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

Medical Leave Act of 1993 ("FMLA"), the employee is not entitled to additional leave time and can be terminated if unable to return to work immediately. However, even if an employee's leave is no longer covered by the FMLA (or was not covered in the first place), other protections may apply, including those created by the Americans with Disabilities Act.

Leave has also been explicitly identified as a reasonable accommodation under the ADA. In nearly every circuit. In fact, for an employee to qualify for leave under the ADA, he or she does not have to be entitled to FMLA leave. Instead, a qualified employee with a disability may be entitled to leave as a reasonable accommodation under the ADA even if:

- The employer has less than 50--but at least 15--employees;
- The employee has not worked at the company for 12 months;
- The employee has not worked at the company for the requisite 1,250 hours; or
- The employee has already exhausted 12 weeks of FMLA leave.

*The only basis for a denial of leave as a reasonable accommodation is through a showing that it would be an undue hardship on the employer.* 42 U.S.C. § 12112(b)(5)(A). Thus, a qualified individual with a disability is entitled to additional leave time beyond the 12 weeks permitted under the FMLA so long as that additional leave time would not constitute an undue hardship on the employer. See 29 C.F.R. § 825.702(b) ("*FMLA entitles eligible employees to 12 weeks of leave in any 12-month period due to their own serious health condition, whereas the ADA allows an indeterminate amount of leave, barring undue hardship, as a reasonable accommodation.*").

### Facts

On or about June 13, 2013, I was approved for intermittent FMLA because I have rheumatoid arthritis ("RA"). RA is a chronic (long-term) disease that causes pain, stiffness, swelling and limited motion and function of many joints. While RA can affect any joint, the small joints in the hands and feet tend to be involved most often. Inflammation sometimes can affect organs as well, for instance, the eyes or lungs. *The stiffness seen in active RA is most often worst in the morning. It may last one to two hours (or even the whole day).* Stiffness for a long time in the morning is a clue that you may have RA, since few other arthritic diseases behave this way. For instance, osteoarthritis most often does not cause prolonged morning stiffness.

In or around August 2013, the Respondent changed my hours to the following: Monday through Friday from *6:00 am to 2:30 pm.* Prior to that time, I had been working the following hours: *Wednesday, Thursday, Friday and Saturday from 9:00 am to 7:30 pm.*

At the time Respondent changed my hours, I told the Respondent that it would be difficult, if not impossible, for me if my start time was moved to 6:00 am. Moreover, because I was on approved intermittent FMLA leave the Respondent was well aware of my medical issues.

On or about December 16, 2013, without being cited for any specific attendance violation, I was written up for Excessive Absences Due to Medical and Non-Medically Related Reasons. See Exhibit "A". Among the comments in the letter, the Respondent stated "you have been away from work using a great deal of sick leave" and "[y]our failure to maintain a larger balance of sick leave has caused me to wonder whether you are abusing your leave privileges and taking advantage of this employee benefit."

On or about December 17, 2013, I was written up again alleging that I had been tardy on December 10, December 11 and December 13. See **Exhibit "B"**.

On or about January 23, 2014, without any specific attendance violation, I was given a Written Reprimand and Chronic and Habitual Attendance Violation. See **Exhibit "C"**. It stated, among other things, "Excessive absence, *regardless of the reason*, causes problems in providing service to our students."

On or about January 31, 2014, without any specific attendance violation, the Respondent gave me a Written Reprimand for attendance stating, among other things, "Mr. Painter has shown a pattern of chronic absences." See **Exhibit "D"**.

On or about February 18, 2014, I was given another Written Reprimand for allegedly being tardy on February 3, 2014 and February 6, 2014. See **Exhibit "E"**.

On or about February 18, 2014, I was given a review for the time period January 1, 2013 through December 31, 2013. See **Exhibit "F"**. A number of comments in the review were regarding my health issues, among the comments, the following:

- "He is tardy far too often, which makes the start of the day much more stressful than it needs to be, and he has health issues that often impair his productivity."
- "He has had health issues, family issues, attendance issues and reading problems."

On or about April 1, 2014, I had a doctor's appointment. My doctor noted in my medical records that "Rheumatoid Arthritis not under good control." See **Exhibit "G"**. Due to the problems I was having with my RA, the doctor gave me a note requesting that I be excused from work on April 2, 2014. See **Exhibit "H"**.

On or about April 10, 2014, the Respondent sent me a letter proposing that I be suspended without pay for 3 days alleging that I was a "No-Call, No-Show" on April 2, 2014. See **Exhibit "I"**. The letter fails to mention anything about my doctor's note excusing me for the day.

On or about April 11, 2014, I met with Allen Humphrey, Assistant Director, regarding the proposed 3 day suspension. During the meeting, I explained to Mr. Humphrey that I was not a "No-Call, No-Show" on April 2, 2014 and that I had, in fact, called in prior to my shift. I also explained to Mr. Humphrey that I had a note from my doctor excusing me from work on April 2, 2014.

On or about April 15, 2014, I was sent a letter from Allen Humphrey suspending me for 3 days. See **Exhibit "J"**. The letter reinforces the fact that the disciplinary process was started on December 16, 2013 without any specific attendance violation. In the letter, Mr. Humphrey admonishes me for calling in my absences to (785) 864-3120 and says that I should have called a different number. However, as the documents the Respondent submitted to the Kansas Department of Labor show, I had been calling one of the two numbers that I was required to call:

2015 FEB -3  AM 9:47

KANSAS CITY AREA OFFICE
RECEIVED EEOC

Remember, when calling in, *call one of these two numbers*.

Sarah's office: (785) 864-3120

Supervisor's office: (785) 864-3907

You must speak to someone, so keep calling until someone picks up – leaving a voicemail does not count as a call in.

Sarah is in her office Monday through Friday, 8am-4:30pm. A Supervisor will be here during all hours that we are open.

See **Exhibit "K"**.

On or about April 16, 2014, I was sent a letter from Allen Humphrey proposing to terminate my employment. See **Exhibit "L"**. The letter alleged that on April 11, 2014, I was 1 hour tardy; that, on April 14, 2014, although I called in at 5:45 am and subsequently took the day off that I was "tardy"; and, that on April 16, 2014, I was 9 minutes "tardy".

On or about April 18, 2014, I met again with Allen Humphrey. This time we met to discuss the proposal to terminate my employment. Again, I explained that my RA made it nearly impossible for me to arrive at work by 6:00 am every day. I further explained to him that I had a note from my doctor excusing me from work on April 16, 2014. See **Exhibit "M"**.

On or about April 21, 2014, I was sent a letter from Allen Humphrey terminating my employment effective April 25, 2014. See **Exhibit "N"**. The letter further stated that I was ineligible for rehire.

On or about April 29, 2014, I was sent a letter from Katie McCauley, Human Resource Specialist, denying my request for coverage under the Family Medical Leave Act because I had been terminated on or about April 25, 2014. See **Exhibit "O"**. The letter further stated that on April 17, 2014 the Respondent had received a Certification of Health Care Provider form complete by my doctor requesting FMLA leave.

I filed for unemployment benefits with the Kansas Department of Labor. The Respondent opposed my request. On or about May 14, 2014, the Kansas Department of Labor denied my request finding, among other things, that "CLAIMANT WAS DISCHARGED FOR CONTINUING TO REPORT LATE TO WORK"; "THE EVIDENCE PRESENTED DOES NOT ESTABLISH THE MAJORITY OF THE LATENESS WERE FOR GOOD CAUSE. CLAIMANT WAS DISCHARGED FOR MISCONDUCT CONNECTED WITH THE WORK." **Exhibit "P"**.

On or about May 28, 2014, I filed an appeal of the denial of my unemployment benefits. See **Exhibit "Q"**.

On or about June 16, 2014, a telephone hearing was conducted regarding my unemployment benefits.

On or about June 23, 2014, the Kansas Department of Labor mailed its Decision in which the Appeals Referee reversed the examiner's decision and awarded me my unemployment benefits. See Exhibit "R".

On or about July 8, 2014, the Respondent filed an appeal of the Appeals Referee's decision to award me unemployment benefits to the Board of Review. See Exhibit "S".

On or about September 12, 2014, in a 2 to 1 decision, the Board of Review entered a Decision reversing the Appeals Referee's award of my unemployment benefits. See Exhibit "T". Based on this decision, I am also required to repay the previously paid benefits.

I have requested review of the decision of the Board of Review and the unemployment matter is still pending.

## Conclusion

The disciplinary process that the Respondent started in December 2013 was not intended to help me. It was intended and started with the goal of terminating my employment. I had been approved for leave and the Respondent was well aware of my health issues. Moreover, a significant part of my rheumatoid arthritis is joint stiffness and pain in the morning.

Finally, other than to approve my leave (which it could not deny), the Respondent made no attempt to enter into any interactive discussion regarding any other reasonable accommodations it could have provided to me. At the time my hours were change to start at 6:00 am, I requested a later start time due to my medical issues. During the write ups in late 2013 and 2014, I repeatedly requested that my hours be changed. The Respondent refused to even consider changing my. Additionally, when my wife called in to report a flare up, she was told that only I could call.

I believe that Respondent discriminated and/or retaliated against me by taking adverse employment action against me including, but not limited to, the following:

1. Disciplining me due to my disability, my record of a disability, or by being regarded as disabled;
2. Terminating me due to my disability, my record of a disability, or by being regarded as disabled;
3. Refusing to allow me to continue my employment when I was able to perform the essential functions of the job;
4. Refusing to allow me to continue my employment when I was qualified and available;
5. Interfering with my ability to take approved leave;
6. For allowing its employees to discriminate and retaliate against me;
7. Refusing to take any action to prevent its employees from further discrimination and retaliation and from creating a hostile work environment;
8. For failing to interactively discuss if any other reasonable accommodations were available;
9. For terminating me for taking time off work due to a medical condition;
10. For terminating my employment; and,
11. For opposing my unemployment benefits.

McKee Law, L.L.C., 13470 Arapaho Drive ■ Suite 170 ■ Olathe, Kansas 66062
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

From: Aaron McKee        Fax: (913) 768-6400         To: +19135516957        Fax: +19135516957        Page 11 of 67 02/02/2015 6:05 PM

I believe that the actions of Respondent were discriminatory and retaliatory. My job was as a food service worker. I had a satisfactory employment record with Respondent and my most recent rate of pay was approximately $12.04 per hour.

On information and belief, based upon my experiences with Respondent, I believe that Respondent knew, or should have known, of the behavior of its managers and employees and it failed to take any action.

I further believe that Respondent created a hostile work environment to discriminate and to retaliate against me.

On information and belief, I further believe that Respondent has engaged in a pattern or practice of discrimination and retaliation against individuals with similarly situated to myself.

RECEIVED EEOC
KANSAS CITY AREA OFFICE
2015 FEB -3   AM 9:48

RECEIVED TIME   FEB. 2.   6:07PM

From: Aaron McKee          Fax: (913) 768-6400          To: +19135516957          Fax: +19135516957          Page 12 of 67 02/02/2015 6:05 PM

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLANANT |
| 1/28/15          _Charging Party Signature_<br><br>Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

NOTARY PUBLIC - State of Kansas
AARON C. McKEE
My Appt. Exp. 9/16/76

McKee Law, L.L.C., 13470 Arapaho Drive ■ Suite 170 ■ Olathe, Kansas 66062
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

RECEIVED EEOC
KANSAS CITY AREA OFFICE
2015 FEB -3 AM 9:18

Exhibit "B"



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

**CERTIFIED MAIL**
7010 0290 0000 2017 7161

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

August 18, 2016

Mr. Jonah H. Painter, Sr.
c/o Aaron C. McKee, Esquire
McKee Law Firm
222 South Cherry Street
Olathe, KS 66061

Re: EEOC Charge Against University of Kansas, Department of HR & Equal Opportunity
No. 563201500667

Dear Mr. Painter, Sr.:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under: Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Kansas City Area Office, Kansas City, KS.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Kansas City Area Office, EEOC
    University of Kansas, Department of HR & Equal Opportunity

Exhibit "C"

**Performance Evaluation for Classified Employees**

The University of Kansas, Lawrence Campus

$1084618$

| Received |
| --- |
| **Human** DEC 1 0 2009 **Opportunity** |
| Resource & Equal |

Employee Name/Department: JONAH PAINTER  //01/09 - 12/31/09
Review Period (MM/DD/YY): From:        :To
Position Number & Job Title: 0063209-MAINT/SVC WKR-FOOD SERVICE
Review Type: Annual
Supervisor: MERLITA WEBSTER

**Position Knowledge and Skills**
Evaluate the degree to which the employee demonstrates competence with methods, procedures, standard practices and techniques applicable to this position and the degree to which the employee demonstrates understanding of KU policies, procedures, goals and purpose as required for this job. Competence may have been acquired by formal training, education and/or experience.

- Exceptional (Demonstrates exceptional knowledge and/or skills in the most complex job aspects)
- Exceeds Expectations (Demonstrates better than average knowledge and/or skills)
- Meets Expectations (Demonstrates adequate knowledge and/or skills)
- Unsatisfactory (Does not demonstrate required knowledge and/or skills to perform certain job duties)

Your Rating is: Exceeds Expectations

Comments: (Required for Exceptional or Unsatisfactory ratings)

**Quantity of Work**

Evaluate the productivity of the employee, considering the working conditions.

- Exceptional (Completes tasks ahead of schedule, seeks additional tasks, recognized as a "peak performer")
- Exceeds Expectations (Completes most tasks ahead of schedule, above-average output)
- Meets Expectations (Completes majority of work within time limits, meets productivity goals)
- Unsatisfactory (Does not complete work within time limits, generally unsatisfactory output)

Your Rating is: Exceeds Expectations

1084618

Comments: (Required for Exceptional or Unsatisfactory ratings)

**Quality of Work**

Evaluate the overall quality of work produced by the employee in accordance with requirements for accuracy, completeness, and attention to detail.



- Exceptional (Produces work of the highest quality, rarely makes errors)
- Exceeds Expectations (Produces high quality work with few errors)
- Meets Expectations (Produces satisfactory work with an acceptable number of errors)
- Unsatisfactory (Produces unacceptable or marginal work with excessive errors)

Your Rating is: Exceeds Expectations

Comments: (Required for Exceptional or Unsatisfactory ratings)

.GREAT JOB ON ALL CATER ITEMS.

**Working Relationships with Co-Workers**

Evaluate the demonstrated effectiveness of working relationships with supervisor and co-workers.

- Exceptional (Consistently communicates and works well with co-workers)
- Exceeds Expectations (Frequently communicates and works well with co-workers)
- Meets Expectations (Generally communicates and works acceptably with co-workers)
- Unsatisfactory (Contributes to ineffective communication with co-workers)

Your Rating is: Exceeds Expectations

Comments: (Required for Exceptional or Unsatisfactory ratings)

JONAH DOES GREAT JOB COVERING OTHER AERAS WHEN NEEDED.

**Customer Focus**

Evaluate the demonstrated effectiveness of working relationships with customers and the employee's focus on "customer" service. A customer may be a KU student, KU employee, work unit, or an individual not formally associated with KU.

1084618

- Exceptional (Consistently anticipates and meets the needs of customers, consistently communicates well and works well with customers)
- Exceeds Expectations (Frequently anticipates the needs of customers, generally communicates well and works well with customers)
- Meets Expectations (Meets customer needs, communicates acceptably and works acceptably with customers)
- Unsatisfactory (Fails to meet customer needs, contributes to ineffective communication with co-workers and customers)

Your Rating is: Exceeds Expectations

Comments: (Required for Exceptional or Unsatisfactory ratings)


## Leadership

(Required for supervisors and optional for lead workers, project managers and others) Influences, supports and Evaluate the productivity of the employee, considering the working conditions.  Please indicate N/A in the comments if it does not apply.

- Exceptional (Consistently contributes to a motivational work environment, leads by example, makes timely and effective decisions, uses resources wisely, delegates effectively, consistently demonstrates and encourages effective communication, consistently treats workers professionally)
- Exceeds Expectations (Frequently encourages staff development, promotes departmental initiatives, makes effective decisions, uses most resources wisely, often delegates, fosters effective communication, demonstrates professional treatment of workers)
- Meets Expectations (Supports co-workers, makes good decisions, generally uses resources wisely, delegates routine tasks, demonstrates acceptable communication skills, treats workers well)
- Unsatisfactory (Neglects co-workers' needs, makes poor decisions for the unit, uses resources poorly, does not delegate appropriately, demonstrates poor communication skills, discourages workers or fails to treat them professionally)

Your Rating is: Meets Expectations          N/A

Comments: (Required for Exceptional or Unsatisfactory ratings)


**Summary of Evaluation**

1084618

**Evaluation Factors**        **Scores**

Position Knowledge        EXC Expectations

Quantity of Work        EXC. Expectations

Quality of Work        EXC Expectations

Working Relationships with Co-Worker(s)        EXC. Expectations

Customer Focus        EXC. Expectations

Leadership (required for some positions)        ~~Meets Expectations~~

2009

**Goal/Job Objectives Achievement**

Goal # one Objective Met

Goal # two Objective Met

Goal # three Objective Met

Goal # four Objective Met

Goal # five Objective Met

**Was the employee given the opportunity to complete the Staff Feedback for Performance Evaluation form?**

Yes, employee chose not to complete.

**Overall Performance Rating by Supervisor**

Consider the employee's input from the "Staff Feedback for Performance Evaluation" form regarding his/her performance, your rating for each of the evaluation factors and your evaluation of goal achievement, plus any optional evaluative comments to determine the overall performance rating. The overall rating must be consistent with these evaluation factors. From the following choices, select the single statement that best describes the employee's overall performance during the rating period.

Your Rating is: *Exceeds* ~~Meets Expectations~~   Jonah does great Job w/ helping

out where needed. often very

**Comments by Supervisor (Required)** flexible w/time.

Misses work because of R.A. Little short in

Summarize your assessment of the employee's performance during the rating. that Dept.

Include comments on individual strengths that contributed to successful performance and/or comment on areas that need attention to strengthen performance.

**Comments by Employee (Optional)**

*1084618*

A. Goal # one
   **Goal Description:**
   Arrive to work on time each day,stay untill the end of your shift.Help to
   develop and maintaine a positive work enviroment,and the teamwork
   spirit.Have open communication with other full time staff, and
   supervisor's.Have the ability to change when needed or expected be
   willing to expand in foodservice.through classes,training,seminars, nacuf's
   ect.

   **Outcome:** Please Select Here Met
   **Comments:** (Required for Goals Not Met and In Progress)

B. Goal # two
   **Goal Description:**
   Make sure that all food is temp'd and recorded on daily sheets before
   going th o the front line for service change out food every 30 min., or as
   needed, for appearance. Make sure that backup's are ready as to ensure
   quality food and service..
   **Outcome:** Please Select Here Met
   **Comments:** (Required for Goals Not Met and In Progress)

C. Goal # three
   **Goal Description:**
   Use time wisely Help train student workers and new cooks as they come
   through GSP> Follow all safety procedures. Servsafe guidelines.
   Communicate with supervisors all equipment problems, any menu
   changes, problems with co-workers.
   **Outcome:** Please Select Here Met
   **Comments:** (Required for Goals Not Met and In Progress)

D  Goal # four
   **Goal Description:**
   Do daily cleaning, clean as you go through day, leave area clean for the
   next person behind you. Make sure area has two-sided bucket with
   sanitzing and cleaning solution ready. Clean solution in thermometers
   container, daily.
   **Outcome:** Please Select Here  Met
   **Comments:** (Required for Goals Not Met and In Progress)

I   Goal # five check on to go cusine, Restock, Make Sanlovred
cut meats, cheeses, back-up cooks at times,

1084618

**Goal Description:**
Garnish food for appearance and display. Garnish all food for lines. Help
out with catering events, special events as assigned by supervisor. To try
new recipes, bring new ideas to the kitchen to improve our dining. ( And
be willing to demonstrate ideas.) to share with other cooks any short-cuts,
techniques any ideas that would make it easy for everyone.
**Outcome:** Please Select Here      Met
**Comments:** (Required for Goals Not Met and In Progress)

1084618

**Employee Feedback for Classified Employees**

The University of Kansas, Lawrence Campus

Supervisors are **required** to provide this feedback form to employees.
Completion of the form by the employee is **optional**. If an employee chooses to
complete the form, please retain a copy of the form for departmental records,
provide a copy to the employee, and submit a copy of the form to Human
Resources/Equal Opportunity with the completed evaluation form.

**Employee Name:** Jonah Painter

If you wish to provide feedback to your supervisor regarding your performance
during the most recent rating period, please complete this form and return it to
your supervisor before your performance appraisal interview.

**1. Describe your major accomplishments during this rating period.**

Cooking more & taking more Responsibility
for cooking.

**2. How did you address your goals during this rating period?**

TRy the Best I can.

**3. What aspects of your performance do you need to improve or do
differently?** Attendance. due to medical.

**4. What additional support would help you do your job more effectively?**

More help,

_Jonah Painter_ SV     11-24-09

Employee Signature          Date

1084618

## Signatures

I understand my signature indicates only that I have read and discussed this performance evaluation with my supervisor.

It does not necessarily mean that I agree with the rating.

Jonah Painter                    12/8/09

Employee Signature                              Date

Mult Webster                    12·8-09

Supervisor Signature                            Date

_____      10/22/09

Reviewer *(Optional for Department Chairs or Directors)*      Date

A permanent employee may appeal any evaluation rating other than "Exceptional" up to 7 calendar days after signing the evaluation. Appeal must be made in writing on forms available from HR/EO Web site at http://www.hr.ku.edu/ . Evaluation ratings recorded with the State of Kansas will be condensed into one of three ratings allowed by the State: Exceptional, Satisfactory, or Unsatisfactory. The KU ratings of "Exceeds Expectations" and "Meets Expectations" will be condensed into the State's rating of "Satisfactory."

1084618

## Goals/Objectives
The University of Kansas, Lawrence Campus

### Review of Goals/Objectives Achievement
(To be used for the next rating period)

Employee Name: JONAH PAINTER    *01/01/09* - 12/31/09
Rating Period (MM/DD/YY):

At least one goal/objective is required. At beginning of rating period, please establish at least one job related goal/objective for next year's evaluation. Additional goals may be added or existing goals modified during the rating period by modifying/adding goals to this form or by using an additional form. Changes and additions must be made at least 30 days before the end of the rating period. The supervisor and employee must sign and date any modifications or additions.

Retain a departmental copy of the established goals/objectives until the end of the rating period. Give the employee a copy of the established goals.

At the end of the rating period, please assess the achievement of each goal/objective. Indicate a summary of your goal/objective ratings in the "Summary of Evaluation - Goal/Job Objectives Achievement" section of the "Performance Evaluation" form. Retain a departmental copy of the goals/objectives and give the employee a copy of the goals after you have a assessed them. Submit a copy of the goals that have been assessed for this rating period to Human Resources/Equal Opportunity with the completed evaluation form.

My signature indicates that the following job related goals have been established and discussed by the supervisor and the employee. Attach additional pages of goals as necessary.

_Jonah Painter Sr_     _10 / 8 / 09_

Employee Signature                                    Date

_Melita Webster_     _10 - 8 - 09_

Supervisor Signature                                   Date

Exhibit "D"

Received by KDOL May 9, 2014 18:00          FAX NO. :                    May. 09 2014 05:01PM  P4

December 16, 2013

MEMO TO:  Jonah Painter

FROM:        Bill Corrigan

SUBJECT:    Excessive Absences Due to Medical and Non Medically-Related Reasons

I have reviewed a schedule of your recent attendance; not only have you been absent on a number of days, but your leave balances are very low. Bottom-line, you have been away from work, using a great deal of sick leave -- often as quickly as it is earned and used annual leave in lieu of sick leave when your sick leave balance was too low. Your absences have been generally approved to date; however, excessive periods of absence, regardless of the reason, cause problems in maintaining service to our students. When you are absent, others must cover your job, making everyone's work more difficult.

In particular, your sick leave balances are far lower than a supervisor would reasonably expect for someone with your length of service. Your failure to maintain a larger balance of sick leave has caused me to wonder whether you are abusing your leave privileges and taking advantage of this employee benefit

Since your paid sick leave is insufficient to cover any lengthy absence from work and you have requested annual leave when your sick leave balance was too low, it may become necessary in the future to place you on "Chronic and Habitual" sanctions and require two weeks notice for annual leave plus written verification for any other absences. If this step is required, a physician's statement verifying incapacitation, the medical reasons for the absence, and estimated date of return with no restrictions will be required for the use of approved sick leave.

I hope you can begin to build your leave balances and correct this pattern of use. If you have questions you may contact me at any time.

WC:akg

c:  Sheryl Kidwell
    Jim Schilling
    Allen Humphrey
    Kip Grosshans

12/9/13

Exhibit "E"

December 17, 2013

MEMO TO:   Jonah Painter

FROM:        Bill Corrigan

SUBJECT:   Excessive Tardiness

In reviewing your recent attendance, it has come to my attention that you have developed a pattern of regular tardiness. The USS Handbook states:

"Tardiness – Tardiness occurs when an employee fails to report to work at the specified starting time. Corrective action may be taken if an employee is recorded late 5 or more minutes after the start of a scheduled work shift. Repeated tardiness after verbal counseling is a pattern of tardiness. If a pattern of reporting to work late within the 5-minute period is established, corrective action may also be taken. In this latter case, the employee must be notified that a pattern of tardiness within 5 minutes has been established before such incidents can be counted toward corrective action."

On Tuesday, 12/10 you clocked in at 6:53am
On Wednesday, 12/11 at 6:14am, and
On Friday, 12/13, at 6:21am.

In looking back over the last couple of months, it is not uncommon for you to be tardy two or more times a week. This is an unacceptable situation, and must not continue. Consider this fair warning. Any further pattern of tardiness will be tracked and appropriate corrective action will be taken.

I hope you can cease this behavior and correct this pattern of abuse. If you have questions you may contact me at any time.

WC:akg

c:   Sheryl Kidwell
     Jim Schilling
     Allen Humphrey
     Kip Grosshans

Exhibit "F"



THE UNIVERSITY OF
KANSAS
Department of
Student Housing

January 23, 2014

MEMO TO:   Jonah Painter, North College Cafe

FROM:       Bill Corrigan and Jim Schilling

SUBJECT:    Written Reprimand and Chronic and Habitual Attendance Violations

We have reviewed your attendance over the past several months and remain concerned at your frequent absences, use of leave without pay, and low leave balances — especially after repeated conversations encouraging you to make improvements in this area. We have discussed attendance and leave use several times and you know our expectation is that staff should report to work as scheduled. Excessive absence, regardless of the reason, causes problems in providing service to our students.

Since your paid leave balances are insufficient to cover any significant absence from work, we have decided it is now necessary to require two weeks notice for approved annual leave (or accrued leave other than sick leave) and written verification for any other absences. These are officially "chronic and habitual leave use sanctions" and they accompany an official Written Reprimand as required for 1290PE-covered employees.

Until further notice, if you request sick leave or leave without pay because of illness, a physician's statement verifying incapacitation which also provides an estimated date of return to full duty and a brief medical reason for the absence will be required for approved sick leave. Until specific notification to the contrary, future absences not meeting these requirements may be considered unexcused; specifically, required documentation must be provided within five working days of the absence or the absence will be considered unexcused.

If unexcused absences occur while these sanctions are in effect, appropriate corrective steps will be followed. This can include recommendation for suspension, and/or recommendation for demotion or dismissal. If you have questions you may contact either of us at any time.

BC/JS:akg

Attachment

c:   Kip Grosshans
     Allen Humphrey, HR/EO

Department of Student Housing
Corbin Hall | 422 West 11th Street, Ste. DSH | Lawrence, KS 66045-3312 | (785) 864-4560 | Fax (785) 864-5048 | www.housing.ku.edu

PAINT00032

Exhibit "G"

Received by KDOL May 9, 2014 18:00    FAX NO. :    May. 09 2014 05:01PM P5



## THE UNIVERSITY OF KANSAS
Human Resources

### Written Reprimand
120PPT COVERED EMPLOYEES ONLY

EMPLOYEE __Painter, Jonah__    DEPARTMENT __Dining Services / USS__

EMPLOYEE ID# __1084618__    NON-PROBATIONARY [ XX ]    PROBATIONARY [ ]

POSITION __Food Service Worker__    DATE/LOCATION OF COUNSELING

**SUPERVISOR'S REPORT OF CIRCUMSTANCES REQUIRING CORRECTIVE ACTION**

1. Describe the nature of the problem/situation.

   Mr. Painter has shown a pattern of chronic absences – see details on attached memorandum outlining "Chronic and Habitual" attendance sanctions.

2. If the employee has previously been counseled especially concerning similar matters, attach copies of the prior record of actions taken. If there actions were not documented, describe here what the actions were, the dates or approximate dates that the incident(s) occurred, and any other pertinent facts.

   Several meetings over several months regarding expectations on attendance have been held with Mr. Painter.

3. What comments were given by the employee to explain his/her viewpoint on the problem/situation described above? (Allow 48 hours for employee response and attach if submitted.)

   will be forwarded if received from employee.

4. Describe what the employee needs to do to improve.

   Follow the terms of the sanctions outlined in the attached memorandum with respect to absences. Report for work as scheduled. Report for work on time.

5. Date/Location follow-up counseling session if applicable.

   as needed

EMPLOYEE IS HEREBY ADVISED THAT FAILURE TO SHOW IMPROVEMENT MAY BE GROUNDS FOR FURTHER DISCIPLINARY ACTION, INCLUDING THE POSSIBILITY OF SUSPENSION, DEMOTION OR DISMISSAL.

6. SUPERVISOR _____ Date 1/31/14

   WITNESS _____ Date 1/31/14
   (REQUIRED IF EMPLOYEE REFUSES TO SIGN)

"I have read this report (or this report has been read to me) and I have discussed it with my supervisor."

THE EMPLOYEE MAY CONTACT HR WITHIN SEVEN (7) DAYS TO APPEAL THIS ACTION IF DESIRED.

EMPLOYEE SIGNATURE _____ Date

"The employee named herein is aware of this report and has been counseled about it by the supervisor whose signature appears above."

DEPT HEAD OR DESIGNEE'S APPROVAL _____ Date 1-22-2014

This written reprimand remains active for 24 months from the date on line 6 unless further incidents of misconduct occur; otherwise, it will serve only as a record that discipline took place and be considered a part of an employee's work history.

Copy 1 -HR    Copy 2 -Department    Copy 3 -Employee    AH 3/7/14

HR hr/dept@ku.edu (785)864-4946 103 Carruth-O'Leary Hall www.humanresources.ku.edu 10/2012 Page 1 of 1

# Exhibit "H"

Received by KDOL May 9, 2014 18:06          FAX NO. :          May. 09 2014 05:02PM  P7



**THE UNIVERSITY OF**
**KANSAS**
Human Resources

### Written Reprimand
#### NON-COVERED EMPLOYEES ONLY

EMPLOYEE ____Painter, Jonah_____          DEPARTMENT _Dining Services / DSH_

EMPLOYEE ID # _1084618_____          NON-PROBATIONARY_ XX _____ PROBATIONARY ____

POSITION _____Food Service Worker_____          DATE/LOCATION OF COUNSELING _____

**SUPERVISOR'S REPORT OF CIRCUMSTANCES REQUIRING CORRECTIVE ACTION**
1.  Describe the nature of the problem/situation.

> Mr. Painter is chronically tardy, clocking in late on February 3 and 6.

2.  If the employee has previously been counseled especially concerning similar matters, attach copies of the prior record of actions taken. If these actions were not documented, describe here what the actions were, the dates or approximate dates that the incident(s) occurred, and any other pertinent facts.

> Mr. Painter was counseled about his tardiness on multiple occasions in December 2013.

3.  What comments were given by the employee to explain his/her viewpoint on the problem/situation described above? (Allow 48 hours for employee response and attach if submitted.)

> will be forwarded if received from employee

4.  Describe what the employee needs to do to improve.

> Report for work on time and as scheduled. Follow attendance guidelines as provided by supervisory staff.

5.  Date/Location follow-up counseling session if applicable.

> as needed

**EMPLOYEE IS HEREBY ADVISED THAT FAILURE TO SHOW IMPROVEMENT MAY BE GROUNDS FOR FURTHER DISCIPLINARY ACTION, INCLUDING THE POSSIBILITY OF SUSPENSION, DEMOTION OR DISMISSAL.**

6.  SUPERVISOR _____          Date _2/18/14_

    WITNESS _____          Date _02-18-14_
    (REQUIRED IF EMPLOYEE REFUSES TO SIGN)

"I have read this report (or this report has been read to me) and I have discussed it with my supervisor."

"The employee named herein is aware of this report and has been counseled about it by the supervisor whose signature appears above."

THE EMPLOYEE MAY CONTACT HR WITHIN SEVEN (7) DAYS TO APPEAL THIS ACTION IF DESIRED.

_Jonah Perrin_ _2/18/14_          _____ _2-10-2014_
EMPLOYEE'S SIGNATURE          Date          DEPT. HEAD OR DESIGNEE'S APPROVAL          Date

This written reprimand remains active for 24 months from the date on line 6 unless further incidents of misconduct occur; otherwise, it will serve only as a record that discipline took place and be considered a part of an employee's work history.

Copy 1 - HR          Copy 2 - Department          Copy 3 - Employee

PAINT00034

Exhibit "I"



THE UNIVERSITY OF
**KANSAS**
Human Resources

Employee ID: _____ 1084618_____

## Performance Evaluation for University Support Staff

**Employee Name/Department: Painter, Jonah**

**Review Period (MM/DD/YY):**  From: 1/1/2013  To: 12/31/2013

**Position Number & Job Title:** Food Service Worker - 00063209

**Review Type: Annual**

**Supervisor: Corrigan, William**

Received

Human

MAR 0 3 2014

Resource

**Position Knowledge and Skills**
Evaluate the degree to which the employee demonstrates competence with methods, procedures, standard practices and techniques applicable to this position and the degree to which the employee demonstrates understanding of KU policies, procedures, goals and purpose as required for this job. Competence may have been acquired by formal training, education and/or experience.
- Exceptional (Demonstrates exceptional knowledge and/or skills in the most complex job aspects)
- Exceeds Expectations (Demonstrates better than average knowledge and/or skills)
- Meets Expectations (Demonstrates adequate knowledge and/or skills)
- Unsatisfactory (Does not demonstrate required knowledge and/or skills to perform certain job duties)

Your Rating is: **Meets Expectations**
Comments: (Required for Exceptional or Unsatisfactory ratings)
**Jonah has been working in food service for quite a while and has acquired ample skills, but he is often handicapped by attendance issues, personal problems and poor planning. He struggles with fully understanding and following recipes, and sometimes overlooks food safety in the name of speeding things up. Having to play catch-up often only aggravates these issues further. If he could get started on time and focus more on the job at hand, he could relax a bit and make better use of those skills.**

**Quantity of Work**
Evaluate the productivity of the employee, considering the working conditions.
- Exceptional (Completes tasks ahead of schedule, seeks additional tasks, recognized as a "peak performer")
- Exceeds Expectations (Completes most tasks ahead of schedule, above-average output)
- Meets Expectations (Completes majority of work within time limits, meets productivity goals)
- Unsatisfactory (Does not complete work within time limits, generally unsatisfactory output)

Your Rating is: **Meets Expectations**
Comments: (Required for Exceptional or Unsatisfactory ratings)
**Jonah can be a highly productive worker under the right circumstances, unfortunately those circumstances are not as common as they should be. He is tardy far too often, which makes the start of the day much more stressful than it needs to be, and he has health issues that often impair his productivity.**

PAINT000395



THE UNIVERSITY OF
**KANSAS**
Human Resources

Employee ID: _____108461 8_____

## Quality of Work
Evaluate the overall quality of work produced by the employee in accordance with requirements for accuracy, completeness, and attention to detail.
- Exceptional (Produces work of the highest quality, rarely makes errors)
- Exceeds Expectations (Produces high quality work with few errors)
- Meets Expectations (Produces satisfactory work with an acceptable number of errors)
- Unsatisfactory (Produces unacceptable or marginal work with excessive errors)

Your Rating is: **Unsatisfactory**

Comments: (Required for Exceptional or Unsatisfactory ratings)
**While there has been improvement as Jonah has gotten more familiar with the new items he is preparing, there have been many mis-steps along the way. He has had issues following recipes properly, often overcooks the scrambled eggs, and his output continues to be inconsistent. He rarely takes things to a higher level, often producing right at the minimum level of acceptability, both in food quality and appearance.**

## Working Relationships with Co-Workers
Evaluate the demonstrated effectiveness of working relationships with supervisor and co-workers.
- Exceptional (Consistently communicates and works well with co-workers)
- Exceeds Expectations (Frequently communicates and works well with co-workers)
- Meets Expectations (Generally communicates and works acceptably with co-workers)
- Unsatisfactory (Contributes to ineffective communication with co-workers)

Your Rating is: **Meets Expectations**

Comments: (Required for Exceptional or Unsatisfactory ratings)
**Jonah almost always gets along well with his coworkers, but has there has been tension with supervisors and management, usually when his product or attendance is an issue.**

## Customer Focus
Evaluate the demonstrated effectiveness of working relationships with customers and the employee's focus on "customer" service. A customer may be a KU student, KU employee, work unit, or an individual not formally associated with KU.
- Exceptional (Consistently anticipates and meets the needs of customers, consistently communicates well and works well with customers)
- Exceeds Expectations (Frequently anticipates the needs of customers, generally communicates well and works well with customers)
- Meets Expectations (Meets customer needs, communicates acceptably and works acceptably with customers)
- Unsatisfactory (Fails to meet customer needs, contributes to ineffective communication with co-workers and customers)

Your Rating is: **Meets Expectations**

Comments: (Required for Exceptional or Unsatisfactory ratings)
**One of the things meeting customer needs means is making sure your output is consistent and of the highest quality. Jonah has struggled with**

PAINT000396



THE UNIVERSITY OF
KANSAS
Human Resources

Employee ID: ____1684665____

**this. He sometimes seems more concerned with grabbing a smoke, or calling home, than meeting customer needs. On a communication level, Jonah does well, and he usually is good about helping out and anticipating needs.**

**Leadership** (Required for supervisors and optional for lead workers, project managers and others) Influences, supports and Evaluate the productivity of the employee, considering the working conditions. Please indicate N/A in the comments if it does not apply.

- Exceptional (Consistently contributes to a motivational work environment, leads by example, makes timely and effective decisions, uses resources wisely, delegates effectively, consistently demonstrates and encourages effective communication, consistently treats workers professionally)
- Exceeds Expectations (Frequently encourages staff development, promotes departmental initiatives, makes effective decisions, uses most resources wisely, often delegates, fosters effective communication, demonstrates professional treatment of workers)
- Meets Expectations (Supports co-workers, makes good decisions, generally uses resources wisely, delegates routine tasks, demonstrates acceptable communication skills, treats workers well)
- Unsatisfactory (Neglects co-workers' needs, makes poor decisions for the unit, uses resources poorly, does not delegate appropriately, demonstrates poor communication skills, discourages workers or fails to treat them professionally)

Your Rating is: Choose an item.
Comments: (Required for Exceptional or Unsatisfactory ratings)

Click here to enter text. Yes,

## Summary of Evaluation

| Evaluation Factor | Rating |
|---|---|
| Position Knowledge | Meets Expectations |
| Quantity of Work | Meets Expectations |
| Quality of Work | Unsatisfactory |
| Working Relationships with Co-Worker(s) | Meets Expectations |
| Customer Focus | Meets Expectations |
| Leadership (required for some positions) | Choose an item. |

| Goal/Job Objectives Achievement | | | Objective |
|---|---|---|---|
| Goal # | 1 | Not Met | |
| Goal # | 2 | In Progress | |
| Goal # | 3 | Not Met | |
| Goal # | 4 | Met | |
| Goal # | 5 | In Progress | |

**Was the employee given the opportunity to complete the Staff Feedback for Performance Evaluation form?**

**Department of Human Resources**
1246 West Campus Road | Lawrence, KS 66045-7505 | (785) 864-4946 | Fax (785) 864-5790
http://www.humanresources.ku.edu

PAINT000397



Employee ID·  1684618

Click here to enter text.

### Overall Performance Rating by Supervisor

Consider the employee's input from the "Staff Feedback for Performance Evaluation" form regarding his/her performance, your rating for each of the evaluation factors and your evaluation of goal achievement, plus any optional evaluative comments to determine the overall performance rating. The overall rating must be consistent with these evaluation factors. From the following choices, select the single statement that best describes the employee's overall performance during the rating period.

Your Rating is: **Meets Expectations**

### Comments by Supervisor *(Required)*

Summarize your assessment of the employee's performance during the rating. Include comments on individual strengths that contributed to successful performance and/or comment on areas that need attention to strengthen performance.

**Jonah has the skill and experience to be a very good contributor to the North College team, but he has been stuggling on so many different levels that he ends up barely sqeaking by. He has had health issues, family issues, attendance issues, and reading problems. He needs to find some way to reduce the chaos so he can focus more at work and raise the bar.**

### Comments by Employee *(Optional)*

Click here to enter text.

### Signatures

I understand my signature indicates only that I have read and discussed this performance evaluation with my supervisor. It does not necessarily mean that I agree with the rating.

_____          2/28/14
Employee Signature                                    Date

_____          2/28/14
Supervisor Signature                                  Date

_____          2-28-14
Reviewer                                                   Date
*(Optional for Department Chairs or Directors)*

A permanent employee may appeal any evaluation rating other than "Exceptional" up to 7 calendar days after signing the evaluation. Appeal must be made in writing on forms available from HR Web

**Department of Human Resources**
1246 West Campus Road | Lawrence, KS 66045-7505 | (785) 864-4946 | Fax (785) 864-5790
http://www.humanresources.ku.edu

PAINT000398



Employee ID: ___ 1084618 ___

site at http://www.humanresources.ku.edu/. Evaluation ratings recorded with the State of Kansas will be condensed into one of three ratings allowed by the State: Exceptional, Satisfactory, or Unsatisfactory. The KU ratings of "Exceeds Expectations" and "Meets Expectations" will be condensed into the State's rating of "Satisfactory." University Support Staff with a current rating of unsatisfactory are ineligible for transfer or to interview for job vacancies at the University of Kansas.

PAINT000399

Exhibit "J"

### COTTON-O'NEIL LAWRENCE RHEUMATOLOGY
330 Arkansas Suite 110
Lawrence KS 66044
785-505-2551

April 2, 2014

Patient:          **Jonah Painter**
Date of Birth:
Date of Visit:    **4/2/2014**

Dear Bill with KU Dining:

I saw Mr. Painter in my office yesterday, and please excuse him from work today due to an arthritis flare.
It is my medical opinion that Jonah Painter my return to work Thursday, April 3rd.

Sincerely,

*[signature]*

· Nancy S Nowlin, MD

Exhibit "K"

Received by KDOL May 9, 2014 18:00          FAX NO. :          May. 09 2014 05:02PM  P8


Human Resources

April 10, 2014

Jonah Painter

Lawrence, KS 66045
Hand Delivered

Status: Regular
I.D. #: 1084618
Pos. #: 00063209

Dear Mr. Painter:

I have been advised by the Student Housing Department and Kansas Memorial Unions that they are recommending disciplinary action for you. I have reviewed the documentation submitted and find, on the basis of this information, that the recommendation for disciplinary action is warranted. In view of this, I am proposing to suspend you without pay from your position as Food Service Worker for three days effective April 22, 2014.

The proposal is justified due to personal conduct specifically, a No-Call, No-Show on April 2, 2014. A No-Call, No-Show is defined as a failure to report to work at the start of your scheduled work shift and failure to notify your supervisor within 30 minutes of the start of the work shift of an intention to be absent or late.

On April 2, 2014, you were scheduled to report to work at 6:00 a.m. You did not report to work at that time and did not call your supervisor to indicate you would be absent or late. At 8:00 a.m., an employee called to check on you. When you answered, you reportedly stated that you had overslept. You took a sick day for the rest of the day on April 2.

Your previous disciplinary file reveals on February 18, 2014, you received a Written Reprimand for clocking in late on February 3, 2014, and February 6, 2014.

On January 31, 2014, you received a Written Reprimand placing you on Chronic and Habitual attendance sanctions.

On December 16, 2013, you were notified via a letter from William Corrigan, Supervisor, that it may become necessary in the future to place you on the "Chronic and Habitual" sanctions.

Information that supports the departmental recommendation for disciplinary action was submitted by William Corrigan, Supervisor in the Kansas Memorial Unions. The documentation on which this proposal is based is available for your review in the Department of Human Resources.

By this letter, I am extending an offer to you to discuss the action proposed. If you disagree with the recommendation submitted by the department, or believe that there are mitigating circumstances, you are encouraged to contact and by telephone, by letter, or in person to discuss this matter. Additionally, you may select another individual of your choosing, and at your cost, to represent you or assist you in this matter. If you wish to meet, you must contact me by 12:00 p.m. (noon), April 15, to schedule a meeting. I can be reached at 785-864-4946.

PAINT00035

Received by KDOL May 9, 2014 18:00          FAX NO. :                    May. 09 2014 05:02PM P9

Jonah Painter
April 10, 2014

If I have not heard from you by the above date, the action proposed to suspend you will become final on the
date proposed and will be verified by letter to you. If you choose not to discuss this matter or this action is not
changed as a result of discussion with me, you will be suspended without pay for three days, effective April 22,
2014. You should work through April 21, 2014, be on suspension April 22, 23, 24; and return to work at your
normal work schedule on April 25, 2014.

Sincerely,

Allen Humphrey
Assistant Director
for the Appointing Authority

AH: km

cc:     University Governance
        Kip Grosshans
        William Corrigan
        Employee Receipt
        HR

_Jonah Pers_

Employee signature (does not indicate agreement,
only receipt of letter)

4/10/14

Date -- Please return signed or witnessed "employee
receipt" copy of letter to HR as soon as possible.

PAINT00036

# Exhibit "L"

Received by KDOL May 9, 2014 18:00          FAX NO. :          May. 09 2014 05:03PM  P10



**THE UNIVERSITY OF KANSAS**

Human Resources

April 15, 2014

Jonah Painter

Lawrence, KS 66046
Hand Delivered

Status: Regular
I.D. #: 1084618
Pos. #: 00063209

Dear Mr. Painter:

I met with you on April 11, 2014, to discuss the proposal to suspend you, without pay, from your position as Food Service Worker, effective April 22, 2014. The grounds for the proposal are due to personal conduct, specifically a No-Call, No-Show on April 2, 2014, as detailed in my April 10, 2014, letter to you.

During our meeting, you stated that on April 2, you called in using the Dining Service 864-3120 phone number approximately five minutes prior to the start of your shift, but that no one answered the phone. You said that you knew previously you had to call in within one half hour of the start of your shift but that you did not "sweat" calling again as you thought, but were not sure, that your supervisor, William Corrigan, told you sometime in the last six months you had until the end of your shift to report an absence.

Mr. Corrigan has stated that he has no recollection of providing you this information and would have not had any reason to do so. Additionally, dining staff have been specifically informed that they must speak with a person when they call in to report an absence. That if you called and no one answered the 864-3120 phone number, you should have called the Dining Services 864-3997 number.

Both phone numbers are posted on the bulletin board outside the supervisor's office and on the employee information board by the time clock with the specific direction, ". . . you must speak to someone, so keep calling until someone picks up – leaving a voicemail does not count as a call in." According to Mr. Corrigan, these signs have been posted for approximately two and a half years. You also signed a "Call-in Procedures for Dining Services Employees" acknowledgement which states in part, "It is your responsibility to make contact with your supervisor or designee except in emergencies" on June 14, 2000.

Additionally, the call-in procedures, to include your responsibility to speak with a person when reporting a tardy or absences, was reviewed with Dining staff again on July 19, 2012, as acknowledged by the "Dining Services New Employee Orientation Checklist" you signed on this date. This direction is also included in the "Full-time Dining Employees Operating Guidelines" handbook which reads in part, ". . . It is the employee's responsibility to continue to call until contact with dining service is made." Furthermore, according to Mr. Corrigan, the expectation that employees speak with a person when calling-in has been in place since he began working at Dining Services (approximately 13 years ago).

When we met on April 11, I asked if you could show me on your cell phone the April 2 call to report your absence. You responded that you had a new phone, you did not make the call on this phone, thus it would not have the April 2 call on it. You contacted me on April 14. You said that you would be able to provide evidence, the phone log, from your old phone that you had attempted to call in on April 2. I asked why you did not call the 864-3997 phone number. You said that you had "heard" about another number [to report absences] but did not know what that number was, you did not have this number, you did not know this number was posted, you had been calling the 864-3120 number for years, and if there was a change [in the number to call] you had not been informed of it. Your explanation, given the information above, is not credible.

PAINT00037

Jonah Painter
April 15, 2014

As noted in my April 10 letter:

* On February 18, 2014, you received a Written Reprimand for clocking in late on February 3, 2014, and February 6, 2014.

* On January 31, 2014, you received a Written Reprimand placing you on Chronic and Habitual attendance sanctions.

* On December 16, 2013, you were notified via a letter from William Corrigan, Supervisor, that it may become necessary in the future to place you on the "Chronic and Habitual" sanctions.

It is clear that you have been counseled about your attendance, the need to improve, and the consequences of not doing so. Unfortunately, your attendance remains unsatisfactory.

Therefore, I have no cause to modify the proposed action; you will be suspended without pay for three days effective April 22, 2014. You should work through April 21, 2014; be on suspension April 22, 23, 24; and, return to work for your next scheduled work day on April 25.

If you feel that this action to suspend you is not appropriate, you have 14 calendar days after the effective date of the action to appeal to the Disciplinary Action Hearing Board, c/o Ms. Kathy Reed, University Governance, 33 Strong Hall, Lawrence, KS 66045.

You should be aware of the fact that subsequent incidents of misconduct or misbehavior or attendance problems; to include a violation of the Chronic and Habitual attendance sanctions, or future incidents of No-Call, No-Show, could result in the need to recommend further disciplinary action for you, including the possibility of dismissal.

Sincerely,

Allen Humphrey
Assistant Director
for the Appointing Authority

AH:    km

cc:    University Governance
       Kip Grosshans
       William Corrigan
       Employee Receipt
       HR Appointment Specialist
       HK

Signature-does not indicate agreement, only receipt of letter.

4/15/14

Date—Please return signed/witnessed "Employee Receipt" copy of letter to HR as soon as possible.

4/15/14

PAINT00038

# Exhibit "M"

Received by KDOL May 9, 2014 18:00     FAX NO. :     May. 09 2014 05:04PM P12



**Human Resources**

April 16, 2014

Jonah Painter

Lawrence, KS 66046
**Hand Delivered**

Status: Regular
I.D. #: 1084618
Pos. #: 00063209

Dear Mr. Painter:

I have been advised by the Student Housing Department and Kansas Memorial Unions that they are recommending disciplinary action for you. I have reviewed the documentation submitted and find, on the basis of this information, that the recommendation for disciplinary action is warranted. In view of this, I am proposing to dismiss you effective April 25, 2014.

The proposal is justified due to personal conduct, specifically, continued violation of chronic and habitual attendance sanctions. Specifically, on Friday, April 11, 2014, you were one hour tardy to work. You were scheduled to report to work at 6:00 a.m., you called in at 6:30 a.m., stated that you had overslept, and arrived to work at 7:00 a.m. When you met with me on April 11 concerning a proposed three day suspension without pay (as identified below) you told me that you "messed up," you should not have done that, there you were distraught about the proposed suspension, and that you were under a lot of stress as you were the sole provider for three people.

On Monday, April 14, 2014, you were tardy. You were scheduled to report to work at 6:00 a.m. and called at 5:45 a.m. to say that your Mom's car was not running so you were going to be late. You called in later to say you would not be in to work.

On Wednesday, April 16, 2014, you were scheduled to report to work at 6:00 a.m., you did not report to work until 6:09 a.m.

Your previous disciplinary file reveals on April 22, 2014, you will be suspended without pay for three days for a no-call, no-show on April 2, 2014.

On February 18, 2014, you received a Written Reprimand for clocking in late on February 3, 2014, and February 6, 2014.

On January 31, 2014, you received a Written Reprimand placing you on Chronic and Habitual attendance sanctions.

On December 16, 2013, you were notified via a letter from William Corrigan, Supervisor, that it may become necessary in the future to place you on the "Chronic and Habitual" sanctions.

PAINT00039

Jonah Painter
April 16, 2014

Information that supports the departmental recommendation for disciplinary action was submitted by
William Corrigan, Supervisor in the Kansas Memorial Unions. The documentation on which this proposal
is based is available for your review in the Department of Human Resources.

By this letter, I am extending an offer to you to discuss the action proposed. If you disagree with the
recommendation submitted by the department, or believe that there are mitigating circumstances, you are
encouraged to contact me by telephone, by letter, or in person to discuss this matter. Additionally, you
may select another individual of your choosing, and at your cost, to represent you or assist you in this
matter. If you wish to meet, you must contact me by 12:00 p.m. (noon) April 21, 2014, to schedule a
meeting. I can be reached at 785-864-4946.

If I have not heard from you by the above date or this action is not changed because of discussion with
me, your dismissal from employment will become final and your official date of dismissal will be
recorded as April 25, 2014, at the end of your work shift.

Sincerely,

Allen Humphrey
Assistant Director
for the Appointing Authority

AH: as

cc:     University Governance
        Kip Grosshans
        Jim Schilling
        Employee Receipt
        File

Employee signature (does not indicate agreement,
only receipt of letter)                          4/16/16

Date / Please return signed or witnessed "employee     4-16-14
receipt" copy of letter to HR as soon as possible.

Department of Human Resources
1246 West Campus Road | Lawrence, KS 66045 | 785-864-4946 | Fax 785-864-5790 |
http://humanresources.ku.edu
Page 2 of 2

PAINT00040

# Exhibit "N"

**COTTON-O'NEIL LAWRENCE RHEUMATOLOGY**
330 Arkansas Suite 110
Lawrence KS 66044
785-505-2551

April 16, 2014

Patient:        **Jonah Painter**
Date of Birth:
Date of Visit:   **4/16/2014**

Dear Bill with KU-Dining:

Jonah is having an arthritis flare, so please excuse him from being late this morning to work and for the rest of the day today.

It is my medical opinion that Jonah Painter may return to work tomorrow, April 17th.

Sincerely,

Nancy S Nowlin, MD

# Exhibit "O"

Received by KDOL May 9, 2014 18:00          FAX NO. :          May. 09 2014 05:04PM P14



THE UNIVERSITY OF
## KANSAS
Human Resources

April 21, 2014

Jonah Painter

Lawrence, KS 66046
Hand Delivered

Status: Regular
I.D. #: 1084618
Pos. #: 00063209

Dear Mr. Painter:

I met with you on April 18, 2014, to discuss the proposal to dismiss you from your position as Food Service Worker, effective April 25, 2014, due to personal conduct. Also in attendance were you father, and Abby Sechrist, Administrative Assistant, Human Resources. The grounds for the proposal are continued violation of chronic and habitual attendance sanctions as detailed in my April 16, 2014, letter to you.

During our meeting, you acknowledged that as listed in my April 16 letter, you were tardy April 11, April 14, and April 16. You stated that you were "guilty of all charges" and that you own up to what you have done. You stated that you hoped if dismissal did occur that you be allowed to be hired by the Kansas Memorial Union to keep working in Dining Services. I explained that the Kansas Memorial Union was a separate organization and you would, I assume, apply through their application process. I suggested that you contact the Kansas Memorial Union Human Resources Office and/or speak with the Dining Services Manager.

Mr. Painter it is clear that you have been counseled repeatedly concerning your unsatisfactory attendance to include notification of the consequences if you did not approve. Despite this you continued to engage in an unacceptable pattern of absence and lateness.

Therefore, I have no cause to modify the proposed action, and you will be dismissed effective April 25, 2014, at the end of your work shift. It is the policy of the University of Kansas not to rehire former employees if their dismissal provides cause for concern in reemployment. In your case, you are not eligible for rehire due to excessive absence.

If you feel that this action to dismiss you is not appropriate, you have 14 calendar days after the effective date of the action to appeal to the Disciplinary Action Hearing Board, c/o Ms. Kathy Reed, University Governance, 33 Strong Hall, Lawrence, KS 66045.

The University is an agency of the State of Kansas, and this letter is intended to serve as a notice of a final agency action by the University of Kansas, Chancellor Bernadette Gray-Little is the agency officer who should receive any service on behalf of the University of any subsequent petition for judicial review of this action.

PAINT00041

Received by KDOL May 9, 2014 18:00        FAX NO. :              May. 09 2014 05:05PM  P15

Jonah Painter
April 21, 2014

In addition, as required by the Consolidated Omnibus Budget Reconciliation Act of 1985, I am notifying you
that you may have the option to elect to continue your health insurance coverage beyond the effective date of
dismissal. If you wish to continue your coverage, you should contact our Benefits Office at 864-4946 or
your health insurance carrier for further information.

Under State of Kansas administration regulation 80-3-9, any participant who elects to formally challenge
termination of employment shall not be eligible to apply to withdraw KPERS funds until any administrative
or judicial review process has been concluded.

Sincerely,

Allen Humphrey
Assistant Director
for the Appointing Authority

AH: as ·

cc:      University Governance
         Kip Grosshans
         Jim Schilling
         Employee Receipt
         HR Appointment Specialist
         File

Signature-does not indicate agreement, only receipt
of letter.

Date—Please return signed/witnessed "Employee
Receipt" copy of letter to HR as soon as possible.

4-21-14

4/21/14

Department of Human Resources
1246 West Campus Road | Lawrence, KS 66045 | 785-864-4946 | Fax 785-864-5790 | http://humanresources.ku.edu
Page 2 of 2

PAINT00042

# Exhibit "P"



THE UNIVERSITY OF
KANSAS
Human Resources

April 29, 2014

Jonah Painter                                          I.D. #: 1084618

Lawrence, KS 66046

Dear Mr. Painter:

On April 17, 2014, we received a Certification of Health Care Provider form completed by N. S. Nowlin, M.D. regarding your request for coverage under the Family Medical Leave Act (FMLA). Due to your employment ending effective April 25, 2014, no action will be taken regarding this request for FMLA.

If you have any questions, please feel free to contact Katie McCauley at 864-7416.

Sincerely,

Katie McCauley
Human Resource Specialist

cc;    PRS

# Exhibit "Q"

COPY

# KANSAS DEPARTMENT OF LABOR

REPLY TO THIS ADDRESS:
U. I. CALL CENTER
P O BOX 3539
TOPEKA KS        66601-3539
785-575-1460    FAX: 785-296-3249

SSN: 
NOTICE OF DETERMINATION         BYB: 04-27-2014
CLAIMANT: PAINTER, JONAH H
EMPLOYER: DEPT OF HR & EQUAL OPPOR
EMPLOYER NO: 0071249

EXAMINER: 306
PAINTER, JONAH H                              NBR & CODE: 01  23202
                                             BEGINS: 04-26-2014
LAWRENCE KS 66046-5931                        ENDS:
                                             MAILED: 05-14-2014

CLAIMANT IS DENIED UNEMPLOYMENT INSURANCE BENEFITS UNDER THE PROVISIONS OF THE EMPLOYMENT
SECURITY LAW, K.S.A. 44-706.

THE DISQUALIFICATION BEGINS 04-26-2014 AND ENDS WHEN CLAIMANT RETURNS TO WORK AND EARNS
THREE TIMES THE WEEKLY BENEFIT AMOUNT OR $ 762, FROM AN EMPLOYER THAT PAYS UNEMPLOYMENT
INSURANCE TAXES.  IF CLAIMANT RETURNS TO WORK AND THEN BECOMES UNEMPLOYED AGAIN, CLAIMANT
MAY FILE ANOTHER CLAIM. THE AGENCY WILL DETERMINE WHETHER CLAIMANT IS ELIGIBLE FOR BENE-
FITS AT THAT TIME, BASED ON THE REASON FOR SEPARATION FROM THE SUBSEQUENT EMPLOYMENT.
WEEKS CLAIMED PRIOR TO THE TIME CLAIMANT RETURNED TO WORK AND EARNED WAGES SUFFICIENT TO
SATISFY THIS DISQUALIFICATION ARE NOT PAYABLE.

FINDINGS: CLAIMANT WAS DISCHARGED FOR CONTINUING TO REPORT LATE TO WORK.  THE EMPLOYER
GAVE OR SENT THE CLAIMANT WRITTEN NOTICE THAT CONTINUING TO REPORT LATE FOR WORK MAY OR
WILL RESULT IN DISCHARGE.  THE LATENESS WAS IN VIOLATION OF THE EMPLOYER'S WRITTEN ABSEN-
TEEISM POLICY, OF WHICH THE CLAIMANT HAD KNOWLEDGE.  THE EVIDENCE PRESENTED DOES NOT ESTA-
BLISH THE MAJORITY OF THE LATENESS WERE FOR GOOD CAUSE.  CLAIMANT WAS DISCHARGED FOR MIS-
CONDUCT CONNECTED WITH THE WORK.

(SEE REVERSE SIDE FOR APPEAL RIGHTS)

K-BEN 421I (REV. 07-12)B80A  NONMONETARY DETERMINATION        ( 1063 )

PAINT00024

APPEAL RIGHTS: THIS DETERMINATION BECOMES FINAL SIXTEEN (16) DAYS AFTER IT IS MAILED, UNLESS APPEALED IN WRITING ON OR BEFORE THE FINAL DATE.    (IF THE 16TH DAY FALLS ON A SATURDAY, SUNDAY OR A HOLIDAY, THE NEXT WORKING DAY IS THE FINAL DATE.)

IF YOU DISAGREE WITH THIS DETERMINATION, AN APPEAL MAY BE FILED BY LETTER STATING YOU WISH TO FILE AN APPEAL AND THE REASON(S) YOU DISAGREE WITH THE DECISION. MAIL YOUR APPEAL TO THE OFFICE OF APPEALS, 401 SW TOPEKA BLVD., TOPEKA, KS 66603-3182 OR FAX TO 785-296-4065. PLEASE INCLUDE IN YOUR LETTER, YOUR NAME, MAILING ADDRESS, TELEPHONE NUMBER AND SOCIAL SECURITY NUMBER. YOU MAY ALSO CONTACT THE CALL CENTER FOR ADDITIONAL INFORMATION AND ASSISTANCE ABOUT FILING AN APPEAL.

                         IMPORTANT TO THE CLAIMANT
IF YOU APPEAL, CONTINUE TO FILE YOUR WEEKLY CLAIMS AS LONG AS YOU REMAIN UNEMPLOYED.

K-BEN 4211 (REV. 07-12)B80A  NONMONETARY DETERMINATION        ( 1063 )

# Exhibit "R"

05/27/2014  08:31    7858655465              LAWRENCE WFC                  PAGE   01/01

**How do I request an appeal?**

Write a letter asking for an appeal of the decision to the Office of Appeals, 401 SW Topeka Boulevard, 2nd Floor, Topeka, KS 66603-3182, fax: (785) 296-4066. If you are the claimant, be sure to include your name, Social Security number, current address and phone number. If you are the employer, include the claimant's name, Social Security number and the issue code of the determination you are appealing. You need not include details about your claim at this time.

Name Jonah Painter sr            Birthday 10/21/

SSN ███████████  ███████████

Address ████████████████████████████████

home Phone ✗✗ 785 8565254
cell Phone ✗✗ 785 840 8926

I Jonah Painter sr Wold like
to appeal the Findings of
the denile of my unmPloyment

DEPARTMENT OF
LABOR

MAY 28 2014

RECEIVED
Topeka Appeals

Received Time May. 28. 2014 10:33AM No. 6309

PAINT00049



# Exhibit "S"

**KANSAS DEPARTMENT OF LABOR**          Office of Appeals, 401 SW Topeka Blvd., Topeka, KS 66603

BEFORE THE UNEMPLOYMENT INSURANCE REFEREE:          BYB: 140427
                                                    ISSUE #: 01
In The Matter Of:                                   ISSUE CODE: 23202

                                        Docket Number:    405505

                                        Social Security # :   XXX-XX-5429

Claimant.       JONAH PAINTER

                LAWRENCE          KS 66046-5931

                                        Hearing:          June 16, 2014
                                                          via telephone

Employer:       DEPT OF HR & EQUAL OPPORTUNITY
                CARRUTH O'LEARY HALL
                1246 W CAMPUS RD RM 103
                LAWRENCE          KS 66045

                                        Decision Mailed:    June 23, 2014

## DECISION

The examiner determined that the claimant was discharged for misconduct connected with the work. The claimant appealed. Claimant, Jonah Painter, appeared by phone. Employer, Dept. of HR & Equal Opportunity, appeared by phone through Allen Humphrey. Katie McCauley also appeared for the employer.

**Issue(s)**

Should the claimant be disqualified for benefits because of the claimant's separation from work?

**Findings of Fact**

The claimant worked for the employer from June 11, 2000, until April 26, 2014. The claimant worked as a food service worker. The claimant was discharged by the employer.

The claimant was discharged for attendance. The employer has a written attendance policy that is general in nature. The claimant was aware of the policy. The claimant was suspended following a no-call/no-show on April 2, 2014. Discharge followed a one-hour tardy on April 11, an unplanned absence on April 14, and being 9 minutes late on April 16. The employer follows a progressive policy which includes counseling, suspension, and then termination. The claimant received two counseling's before his suspension, but the details of the claimant's absenteeism prior to the April 2 incident is unknown.

**Legal Conclusions**

Misconduct is the violation of a duty that is reasonably owed an employer by an employee. K.S.A. 44-706(b)(1). The employer is burdened to show misconduct and must do so by a preponderance of the evidence. *Farmland Foods, Inc. v. Kansas Employment Security Bd. of Review*, 225 Kan. 742, 744, 594 P.2d 194 (1979). Preponderance of the evidence "means that

PAINT00050

evidence which shows a fact is more probably true than not true." *In re B.D.-Y.*, 286 Kan. 686, 696-97, 187 P.3d 594 (2008).

The employer has not met its burden. The claimant was a no-call/no-show on April 2, but was not terminated for that event. Otherwise, the claimant attendance record shows two tardies and one absence. The employer is required to show, among other things, that the claimant was absent without good cause in violation of its attendance expectation. K.S.A. 44-706(b)(2)(B)(i). Failing to show the corresponding infractions allegedly supporting the steps of its progressive discipline process prevents the employer from meeting this initial requirement, because it cannot show an absence or tardiness in support. The employer has not shown misconduct in this case. The claimant is qualified.

## Decision

The examiner's determination is modified regarding the beginning date and reversed. The claimant was discharged but not for misconduct connected with the work. The claimant is qualified for benefits beginning April 27, 2014.

IT IS SO ORDERED.

Shawn P. Yancy
Appeals Referee


## * * NOTICE**

You have the right to appeal if you disagree with this decision. You have 16 days after the date this decision is mailed to file an appeal with the Kansas Employment Security Board of Review. This means your appeal must be postmarked by July 9, 2014. **If your appeal is not postmarked by July 9, 2014, this decision will become a final decision on that date and any further review will be denied.**

To appeal, mail a letter of appeal stating the reason(s) for your appeal to the Kansas Employment Security Board of Review at the following address:

Kansas Employment Security Board of Review
401 SW Topeka Blvd.
Topeka, KS 66603

Docket # 405505

# Exhibit "T"

# KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW

Department of Labor Building
401 SW Topeka Boulevard, Topeka, Kansas 66603

MEMBERS
Wayne Maichel
Lori MacDonald
Philip M. Hayes

EXECUTIVE SECRETARY
Cecelia R. Resnik
(785) 296-5000 ext 2535

| | |
|---|---|
| 1. Claimant's Name and Address<br><br>JONAH PAINTER<br>▬▬▬▬▬▬<br>LAWRENCE   KS   66046-5931 | 3. Date this Notice mailed: 7/11/14 |
| | 4. Appeal No. BR 14-1656 K |
| | 5. Soc. Sec. No. ▬▬▬▬▬▬   smd |
| | 6. Appeal to the Board of Review filed by: Employer<br><br>Date:          7/8/14 |
| | 7. Appeal from:<br>UI Referee Decision No:   405505<br><br>Date mailed:          6/23/14 |
| 2. Employer's Name and Address<br><br>DEPT OF HR & EQUAL OPPORTUNITY<br>CARRUTH-O'LEARY HALL<br>1246 W CAMPUS RD   RM 103<br>LAWRENCE   KS   66045 | 8. Issues Involved:<br><br>Discharged, not misconduct. |
| | 9. Date appeal to be considered by Board of Review:<br><br>Within 30-60 days |

## ACKNOWLEDGEMENT OF APPEAL BEFORE BOARD OF REVIEW

The Board of Review has received the Notice of Appeal as detailed above.

The Board will review and consider the evidence on the date indicated in Item 9.

Since the Board's consideration is based on evidence in the records, together with a complete transcript of the hearing before the Unemployment Insurance Referee, presence of the parties is not necessary. If, in the discretion of the Board of Review, additional evidence is necessary to enable it to render a decision, all parties will be duly notified of the time, date and place of a hearing for additional evidence.

K.S.A. 44-714 (f) provides in part the transcript of the UI Referee's hearing is considered by law confidential in nature.

K-OA 52 — WPF (Rev. 3-14) BR Docket Sheet

PAINT00052

# EXHIBIT "U"



**OFFICE OF THE**
**GENERAL COUNSEL**
The University of Kansas

July 8, 2014

Kansas Employment Security Board of Review
401 SW Topeka Blvd.
Topeka, KS 66603

      Re:  Employer University of Kansas' Appeal from June 23, 2014, Appeals Referee's
           Decision, Docket Number 405505

         Claimant: Jonah Painter; Social Security #:  XXX-XX-5429
         Employer:  University of Kansas Dept. of Human Resources and Equal Opportunity

Dear Security Board of Review Members:

      The University of Kansas (University) appeals the June 23, 2014, Decision of the
Appeals Referee, which reversed the examiner's determination that the claimant was disqualified
for benefits because of his dismissal for misconduct connected with the work.  The Appeals
Referee's Decision concluded that the University failed to meet its burden to prove that the
claimant was dismissed for misconduct.  As discussed more fully below, the Appeals Referee's
Decision should be reversed because:  1) the Referee cited the incorrect statutory provision as a
legal basis for his decision and wrongly interpreted the law; and 2) the Referee's decision is
contrary to the competent and substantial evidence presented by the University, which
established that the employee's discharge was for misconduct.

    I.     Statement of the Case.

      Jonah Painter was employed by the University of Kansas as a food service worker in the
University's Department of Student Housing.

      The University expects regular, reliable attendance at work from its employees.  The
University's attendance guidelines state that "as a condition of employment, employees are
expected to report for duty at the assigned time and place and to remain on duty during
scheduled work hours."  *See* Hearing Exhibit 2, p. 1.  The University's attendance guidelines
make clear that it is the employee's responsibility to communicate with the supervisor regarding
any absences or tardiness, and that the immediate supervisor will determine whether the absence
or tardiness should be excused.  *See* Hearing Exhibit 2 p. 1.  University policy expressly states
that attendance violations "represent misconduct" for which progressive discipline will be
imposed, including dismissal from employment.  *See* Hearing Exhibit 2, p. 2-3.  Call-in
procedures for Dining staff were reviewed with staff on July 19, 2012, and Mr. Painter
acknowledged his understanding of those procedures by his signature.  *See* Hearing Exhibit 3, p.
1.

Kansas Employment Security Board of Review
Re:  Appeal of Jonah Painter Decision, Docket # 405505
July 8, 2014
Page 2

On December 16, 2013, Mr. Painter was provided a written memorandum counseling him regarding his "excessive absences due to medical and non-medically-related reasons."  *See* Hearing Exhibit 1, p. 1.  He was advised that if he failed to improve his attendance and leave balances, then he would be placed under chronic and habitual leave use sanctions.  *See* Hearing Exhibit 1, p. 1.

On January 31, 2014, Mr. Painter was given a written reprimand for "frequent absences, use of leave without pay, and low leave balances - - especially after repeated conversations encouraging [Painter] to make improvement in this area."  *See* Hearing Exhibit 1, pp. 2-3.  As a result, Mr. Painter was placed on "chronic and habitual leave use sanctions."  *See* Hearing Exhibit 1, p. 2.  The written reprimand closed with the warning to Mr. Painter that if unexcused absences occurred, appropriate corrective steps would be taken, which could include "a recommendation for suspension, and/or recommendation for demotion or dismissal."  *See* Hearing Exhibit 1, p. 2.

On February 18, 2014, Mr. Painter was given a written reprimand for being tardy by clocking in late on February 3 and 6, 2014.  *See* Hearing Exhibit 1, p. 4.  The written reprimand noted that Mr. Painter had been counseled about his chronic tardiness on multiple occasions in December 2013.  *See* Hearing Exhibit 1, p. 4.

On April 10, 2014, Mr. Painter was advised in writing that the University was proposing to suspend him without pay for three days as a result of a no-call, no-show for work on April 2, 2014.  Following Mr. Painter's meeting with Allen Humphrey, Assistant Director Human Resources, Mr. Painter was suspended without pay for three days effective April 22, 2014.  *See* Hearing Exhibit 1, pp. 7-8.

On April 11, 2014, Mr. Painter was tardy, reporting to work one hour late at 7:00 a.m. *See* Hearing Exhibit 1, p. 9.  On April 14, 2014, Mr. Painter called fifteen minutes prior to his 6:00 a.m. start time and stated that he was going to be late because his mom's car was not running.  However, Mr. Painter called later to say he would not be at work that day.  *See* Hearing Exhibit 1, p. 9.  On April 16, 2014, Mr. Painter was tardy, arriving 9 minutes after the scheduled start of his work.  *See* Hearing Exhibit 1, p. 9.  As a result of these incidents, on April 16, 2014, Mr. Painter was advised in writing that his dismissal from employment had been proposed.  *See* Hearing Exhibit 1, pp. 9-10.

Mr. Painter met with Allen Humphrey, Assistant Director of Human Resources on April 18, 2014, regarding the proposed dismissal.  *See* Hearing Exhibit 1, p. 11.  In that meeting, Mr. Painter admitted that he was "guilty of all charges," and accepted responsibility for what he had done.  *See* Hearing Exhibit 1, p. 11.  Mr. Humphrey noted that despite being "counseled repeatedly concerning [his] unsatisfactory attendance to include notification of the consequences if [he] did not improve[,] . . . [Mr. Painter] continued to engage in an acceptable pattern of

Kansas Employment Security Board of Review
Re:  Appeal of Jonah Painter Decision, Docket # 405505
July 8, 2014
Page 3

absence and lateness." *See* Hearing Exhibit 1, p. 11.  Mr. Humphrey, therefore, concluded that dismissal from employment was appropriate.  *See* Hearing Exhibit 1, p. 11.

II.     The Appeal Referee's Decision should be set aside.

An individual who is dismissed from employment because of misconduct is disqualified from receiving unemployment benefits.  K.S.A. 44-706(b).  Misconduct is defined "as a violation of a duty or obligation reasonably owed the employer as a condition of employment."  K.S.A. 44-706(b)(1).  The statute expressly states:  "Failure of the employee to notify the employer of an absence shall be considered prima facie evidence of a violation of a duty or obligation reasonably owed the employer as a condition of employment."  *Id.*

In this case the evidence presented at hearing, as outlined above, established that Mr. Painter was dismissed from employment following his having assembled a record of chronic absences and tardiness.  The evidence showed that the University attempted to assist Mr. Painter with bringing his attendance into compliance with the University's expectations for regular, reliable attendance.  The University engaged in progressive discipline, first counseling Mr. Painter regarding his attendance violations, then issuing him two written reprimands for his attendance violations, and then suspending him without pay.  Despite the University's efforts, Mr. Painter persisted in the same misconduct of absence and tardiness, ultimately leaving the University no choice but to dismiss him from employment.

A.     Appeal Referee relied on the Incorrect Statutory Provision and Wrongly Applied the Law.

In the Decision, the Appeals Referee cites K.S.A. 44-706(b)(2)(B)(i) for the proposition that "the employer is required to show . . . that the claimant was absent without good cause in violation of its attendance expectation."  *See* Decision, p. 2.  The cited statutory provision, however, contains no such language.  Instead, the cited statutory provision relied on to support the Decision is not even applicable to this case.  Rather, that statutory provision addresses a test sample collected "as prescribed by the drug free workplace act."  K.S.A. 44-706(b)(2)(B)(i).

In addition to citing an incorrect statutory provision to support his decision, the Appeals Referee wrongly applied the law.  K.S.A. 44-706(b)(1), expressly provides that the employee's failure to notify an employer of an absence is "prima facie evidence" of a violation of the duty reasonably owed the employer.  The University's evidence presented at hearing showed that Mr. Painter was no-call, no-show on April 2, 2014, that he was an hour late for work on April 11, 2014, without any excuse, that he failed to show up for work on April 14, 2014, and that he was tardy for work on April 16, 2014.  This prima facie evidence of misconduct directly contradicts the Appeals Referee's conclusion that the University failed to show misconduct and demonstrates that the Appeals Referee wrongly applied the law.

The Appeals Referee's statement concerning the burden of proof also incorrectly applies the law.  As stated in Section 4.7 of the <u>Unemployment Insurance Appeals Hearing Instructions</u>:

# EXHIBIT "V"

ISSUE #: 01

State of Kansas
## EMPLOYMENT SECURITY BOARD OF REVIEW

| Social Security Number | ▓▓▓▓▓▓ | Appeal No. | BR-14-1656 K |

| Claimant | | Appellant | Employer |

JONAH PAINTER

LAWRENCE KS. 66046-5931

Decision Mailing Date       September 12, 2014

Employer

DEPT OF HR & EQUAL OPPORTUNITY
CARRUTH O'LEARY HALL
1246 W CAMPUS RD RM 103
LAWRENCE KS   66045

Any action of the Board is subject to review in accordance with the Kansas Judicial Review Act. In the absence of an action for such review, the action of the Board shall become final 16 calendar days after the date of the mailing of the decision. If any party desires to appeal, it must be filed in state district court within this period of time. The procedure for appealing to district court is provided for in K.S.A. 44-709(i) and K.S.A. 77-601, et seq., as amended. After filing a petition for judicial review in district court, a copy of the petition must be served on Cecelia Resnik, Executive Secretary, Employment Security Board of Review, 401 S.W. Topeka Boulevard, Topeka, Kansas 66603-3182.

## DECISION

Now on this 11th day of August, 2014 the above-entitled matter comes on for consideration by the Board of Review.

The Board, after reviewing all the evidence and being fully advised in the premises, makes the following finding of fact. Employer timely appeals the decision of the referee mailed June 23, 2014 wherein the referee found claimant was discharged, but not for misconduct.

The majority of the Board reverses the decision of the Referee. The record contains overwhelming evidence that the claimant was habitually late or absent from work. Further, the record is clear that the claimant was repeatedly advised of the employer's reasonable attendance expectations and the consequences for failure to meet those expectations. See K.S.A. 44-706(b)(2)(B). The claimant is unemployed because of his own actions. To grant unemployment benefits in this case would be to ignore the plain language of the employment security law as well as the underlying public policy behind the law. The decision of the Referee is reversed. The claimant is disqualified to receive unemployment benefits.

Benefits paid to the claimant constitute an overpayment and must be repaid. See K.S.A. 44-719.

BOARD OF REVIEW

*Lori MacDonald*
Lori MacDonald

*Phillip M. Hayes*
Phillip M. Hayes

*Kansas Judicial council.org*

K-OA 51 (Rev 4-14)

PAINT00053

## DISSENT

I adopt the logic of the Referee's decision. The employer's progressive discipline policy was not followed.

*Wayne Maichel*
Wayne Maichel

*Law. Lybeey*
*745*
*296*
*3257*

# EXHIBIT "W"

04/07/2015 16:00 FAX                                                              ☑001

## DOUGLAS COUNTY DISTRICT COURT
### SEVENTH JUDICIAL DISTRICT
JUDICIAL CENTER, 111 E. 11TH
LAWRENCE, KANSAS 66044-2966
785-832-5323

PAULA B. MARTIN, Judge
Fifth Division

PAIGE H. HILL
Administrative Assistant

COURT REPORTER
SHELEE SHAFER
785-832-5234

March 27, 2015

*14C355*   *Jonah Painter v. Kansas Employment Security Board of Review*

## MEMORANDUM DECISION

This is a judicial review of the decision of Kansas Employment Security Board of Review finding that Petitioner is disqualified from receiving unemployment benefits under the provisions of K.S.A. 44-706 because the University of Kansas (hereinafter "Employer") discharged him for misconduct connected with work.

Plaintiff clarifies in his Reply Brief that the basis of his appeal is that the Board's decision finding that he had committed misconduct is not supported by the evidence in the record.

The standard of review is correctly set out in the memoranda of the parties and will not be set out herein.

### Findings of Facts

1. Petitioner received notice of employer's concern regarding excessive absences from work. He was notified that if the behavior continued he would be placed on "Chronic & Habitual" sanctions.

2. The behavior continued and petitioner was given a written reprimand for chronic absences and advised that failure to show improvement may be grounds for suspension, demotion or dismissal.

3. Petitioner received a second written reprimand for continued tardiness and was again advised that failure to show improvement may be grounds for suspension, demotion or dismissal.

☒002

2 | P a g e

4. Petitioner took no appeal from these actions.

5. Subsequently, petitioner did not report to work and did not notify his supervisor that he would be absent.

6. On or about April 10, 2014, petitioner was notified that based on the above behavior disciplinary action was triggered. The proposed disciplinary action was suspension without pay for three (3) days beginning April 22, 2014.

7. The following day, April 11, 2014, petitioner was late reporting to work.

8. On April 14, 2014, petitioner called in fifteen minutes prior to his start time to say he would be late. Written policy requires thirty (30) minutes notice. Petitioner later called to advise he would not be coming at all.

9. April 16, 2014, defendant was late.

10. Based on the misconduct subsequent to the notice of suspension, petitioner was advised that further disciplinary action was triggered. The proposed disciplinary action was termination, to be effective April 25, 2014. Petitioner did not contest the employer's findings and indicated he was "guilty of all charges." Petitioner did not appeal the disciplinary action.

11. On April 27, 2014, petitioner applied for unemployment benefits which were denied.

12. Petitioner appealed and the referee reversed the denial.

13. The employer requested review of the referee's decision and the Kansas Employment Board of Security Review reversed the referee's decision.

Conclusion of Law

The employer bears the burden of proving misconduct by a preponderance of the evidence. Misconduct is defined as a "violation of a duty or obligation reasonably owed the employer as a condition of employment." K.S.A. 44-706(b)(1).

3 | P a g e

K.S.A. 2014 Supp. 44-706(b)(2)(B), provides, in part, that misconduct shall include, but not be limited to, violation of the employer's reasonable attendance expectations if the facts show:

> (i)   The individual was absent or tardy without good cause;
> (ii)  The individual had knowledge of the employer's attendance expectations; and
> (iii) the employer gave notice to the individual that future absence or tardiness may or will result in discharge.

The Employee Manual sets out the employer's attendance expectations and disciplinary policy.

> Additionally, the employer has a written policy which states: [a] 'chronic pattern of excessive or unjustified absences' exists when an employee's absences from work-whether excused or not-have a negative affect (sic) on a unit's ability to provide service . . . [a]fter notice has been given, another incident of unjustified or excessive absence may result in disciplinary action at the next higher step of progressive discipline. If continuing absences result in leave without pay in 2 consecutive pay periods, even absences justified by physician's statements may not be excused. In this case, the next higher step of progressive discipline may be applied.

The employer's policy also states "[w]hen violations from more than one attendance category or attendance and other misconduct violations occur, the employee's entire disciplinary record may be considered to determine the appropriate level of disciplinary action."

Petitioner bears the burden of showing agency error. K.S.A. 77-621(a). Petitioner alleges the decision was based on something less than substantive evidence. Evidence is substantial when a reasonable person might accept it as sufficient to support that conclusion. *Herrera-Gallegos,* 42 Kan.App.2d 360, 363 (2009). In *Herrera-Gallegos,* the court reviewed K.S.A. 77-621 and held that the reviewing court "must determine whether the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion. *Id.* If the evidence is not undermined so as to be insufficient, the decision-----here, to disqualify Petitioner from receiving unemployment benefits-----must be upheld.

Petitioner was discharged due to his misconduct, both personal conduct and attendance issues. Petitioner was tardy and absent (both with and without notice) multiple times beginning in December, 2013, through April 25, 2014. Notice was given and further incidents occurred. Petitioner was next given two written reprimands. The misconduct continued, after each reprimand until

4 | P a g e

written reprimands. The misconduct continued, after each reprimand until after the second written reprimand, Petitioner was suspended for three days. And still the petitioner continued to be tardy and absent. The evidence clearly establishes that beginning in December, 2013, the Petitioner was repeatedly advised of the employer's expectations and the possible consequences for failure to meet those expectations.

After a review of the record the court finds there is substantial evidence to support the findings of the Kansas Employment Security Board of Review. The decision of the Kansas Employment Security Board is affirmed.

This Memorandum Decision constitutes a Journal Entry dated on the 27th day of March, 2015.

Paula B. Martin
District Judge

cc:     Dennis "Boog" Highberger
        Bradley Burke
        Ashlee N. Yager